# In re Y-T-L-, Respondent

*Decided May 22, 2003*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

Where an alien has established past persecution based on the forced sterilization of his spouse pursuant to a policy of coercive family planning, the fact that, owing to such sterilization, the alien and his spouse face no further threat of forced sterilization or abortion does not constitute a "fundamental change" in circumstances sufficient to meet the standards for a discretionary denial under 8 C.F.R. § 1208.13(b)(1)(i)(A).

FOR RESPONDENT: Wai-Sim Cheung, Esquire, New York, New York

FOR THE IMMIGRATION AND NATURALIZATION SERVICE:[1] John P. Marley, Assistant District Counsel

BEFORE: Board En Banc: HOLMES, Acting Vice Chairman; HURWITZ, COLE, GUENDELSBERGER, GRANT, MOSCATO, MILLER, BRENNAN, OSUNA, and HESS, Board Members. Dissenting Opinions: FILPPU, Board Member, joined by SCIALABBA, Chairman; PAULEY, Board Member.

GRANT, Board Member:

In a decision dated July 10, 2001, an Immigration Judge found the respondent removable and denied his requests for asylum, withholding of removal, and relief under Article 3 of the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, *adopted and opened for signature* Dec. 10, 1984, G.A. Res. 39/46, 39 U.N. GAOR Supp. No. 51, at 197, U.N. Doc. A/RES/39/708 (1984) (entered into force June 26, 1987; for the United States Apr. 18, 1988) ("Convention Against Torture"). The respondent has appealed from that decision. The appeal will be sustained.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The respondent is a native and citizen of the People's Republic of China, who entered the United States in 1993 without valid entry documents. He is married and has three children. His family remains in China.

---

[1] We note that the functions of the Immigration and Naturalization Service have been transferred to the Department of Homeland Security pursuant to the Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135.

The respondent testified that the Chinese Government imposed a large fine after the birth of his second child and that he was only able to pay the fine with the assistance of his younger brother, who helped him borrow money. He indicated that his wife was forced to have an intrauterine device ("IUD") inserted after the birth of their second child. However, she was simultaneously informed that she soon would have to undergo sterilization. In February 1985 they paid to have the IUD removed in secret, because they wanted additional children. The respondent's third child, a son, was born in December 1985. His wife was taken for sterilization in March 1986, and a substantial fine was imposed in April 1986.

Although the respondent and his wife were allowed to register their son in the household registry after the payment of the fine, they were not allowed to register him in school. He could attend school, but only with the payment of very high tuition. Their two daughters were suspended from school for one semester. The Government also confiscated land assigned to the family, from which they earned their livelihood by farming. They survived by borrowing money from friends and relatives to live and pay the fines, and eventually the respondent was employed in a relative's store.

According to the respondent, every time the Government had a birth control campaign they asked him and his wife to attend the study class, and they actually used his family as a "bad example" to educate other people. The respondent made plans to leave China in 1986 and made two unsuccessful attempts in the late 1980s to obtain governmental approval for a passport. He eventually left in 1993 with the aid of a smuggler and his relatives, who pooled their money to help him leave.

In his decision, the Immigration Judge accepted the respondent's testimony as credible, finding that he is married, that he and his wife have three children, and that his wife was subjected to involuntary sterilization pursuant to a coercive population control program. The Immigration Judge concluded that these facts established past persecution under section 101(a)(42) of the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(42) (2000), and *Matter of C-Y-Z-*, 21 I&N Dec. 915 (BIA 1997).

The Immigration Judge noted, however, that the Immigration and Naturalization Service ("Service," now the Department of Homeland Security, DHS) could rebut the presumption of a well-founded fear of future persecution resulting from this showing of past persecution by establishing a fundamental change in circumstances.[2] In this regard he observed that the

---

[2]   In making this observation, the Immigration Judge apparently relied on 8 C.F.R. § 208.13(b)(1)(i)(A) (2001). As a result of the transfer of the functions of the Immigration and Naturalization Service to the Department of Homeland Security, the regulations in chapter I of the Code of Federal Regulations were transferred or duplicated to a new chapter V, and this regulation is now codified at 8 C.F.R. § 1208.13(b)(1)(i)(A). *See* Aliens and Nationality;

(continued...)

respondent remained in China for more than 7 years after his wife was sterilized, and he found no evidence that "anything significant has happened to either the respondent or his family in China" subsequent to his wife's sterilization and the payment of fines in 1986. He concluded that "with the passage of time and the lack of evidence of any further persecution," the Service met its burden of proving by a preponderance of the evidence that there had been a fundamental change in circumstances such that the respondent no longer has a well-founded fear of persecution. The Immigration Judge therefore denied the respondent's applications for asylum, withholding of removal, and relief under the Convention Against Torture.

## II. ISSUE

The sole issue on appeal is whether the Service has established a fundamental change in circumstances under 8 C.F.R. § 1208.13(b)(1)(i)(A), such that the respondent no longer has a well-founded fear of persecution in China.

## III. STATUTORY AND CASE LAW

Section 101(a)(42) of the Act was amended by section 601(a)(1) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Division C of Pub. L. No. 104-208, 110 Stat. 3009-546, 3009-689 ("IIRIRA"). Pursuant to that amendment, the definition of a "refugee" specifically includes the following:

> For purposes of determinations under this Act, a person who has been forced to abort a pregnancy or to undergo involuntary sterilization, or who has been persecuted for failure or refusal to undergo such a procedure or for other resistance to a coercive population control program, *shall be deemed to have been persecuted on account of political opinion*, and a person who has a well founded fear that he or she will be forced to undergo such a procedure or subject to persecution for such failure, refusal, or resistance shall be deemed to have a well founded fear of persecution on account of political opinion.

Section 101(a)(42) of the Act (emphasis added).

We have held that this statutory amendment superseded prior administrative interpretations holding that coerced abortions and sterilizations do not constitute persecution on account of a protected ground. *See Matter of X-P-T-*, 21 I&N Dec. 634 (BIA 1996) (holding that an alien who was forced to undergo an abortion or sterilization procedure can establish persecution on account of political opinion); *see also Matter of C-Y-Z-*, *supra*

---

[2] (...continued)

Homeland Security; Reorganization of Regulations, 68 Fed. Reg. 9824, 9834 (Feb. 28, 2003), 2003 WL 553495. References in this decision to the current version of the regulations will therefore be cited according to their new designation.

(holding that the refugee definition can include an individual whose spouse was forced to undergo such a procedure).

## IV.  REGULATORY PRESUMPTION AND CONDITIONS FOR REBUTTAL

In *Matter of C-Y-Z-*, *supra*, we found that the applicant had suffered past persecution because his wife was forced to undergo an involuntary sterilization, and we noted the resulting regulatory presumption that the applicant had a well-founded fear of future persecution.  The regulation at issue in *Matter of C-Y-Z-* provided in relevant part:

> If it is determined that the applicant has established past persecution, he shall be presumed also to have a well-founded fear of persecution unless a preponderance of the evidence establishes that since the time the persecution occurred conditions in the applicant's country of nationality or last habitual residence have changed to such an extent that the applicant no longer has a well-founded fear of being persecuted if he were to return.

8 C.F.R. § 208.13(b)(1)(i) (1997).

Based on this language, we determined that the regulatory presumption could be rebutted only by a showing that conditions in the applicant's country had changed to such an extent that the applicant no longer had a well-founded fear of persecution if returned to his home country.  *Matter of C-Y-Z-*, *supra*, at 919.  We noted that the Service had not presented any evidence of such changed conditions.  We also rejected the Service's argument that a spouse who has established past persecution in this manner bears the further burden of "demonstrating that the involuntary sterilization was carried out in such a way as to amount to an 'atrocious form' of persecution."  *Id.*[3]

The regulation at issue in *Matter of C-Y-Z-*, *supra*, however, along with the regulation governing the effect of past persecution on an application for withholding of removal, was amended through the publication of a final rule, which became effective on January 5, 2001.  *See* Asylum Procedures, 65 Fed. Reg. 76,121, 76,133 (Dec. 6, 2000), 2000 WL 1780075.  The final rule amended 8 C.F.R. § 208.13(b)(1) to provide, in pertinent part, as follows:

> An applicant who has been found to have established such past persecution shall also be presumed to have a well-founded fear of persecution on the basis of the original claim. That presumption may be rebutted if an asylum officer or immigration judge makes one of the [following] findings . . . .

---

[3]  This argument was based on a memorandum from the Service General Counsel asserting that the "atrocious" standard must be met if the applicant "does not have a well-founded fear of future persecution."  *Matter of C-Y-Z-*, *supra*, at 918.  The Service argument in *C-Y-Z-*, therefore, implied that a respondent in the position presented in this case does not have a well-founded fear.  Since the Service offered no evidence of changed country conditions, *see id.* at 919, its position in *C-Y-Z-* appears to be consistent with its position here:  that the act of sterilization obviates the possibility of future persecution along these lines.

(i) *Discretionary referral or denial.* [A]n immigration judge, in the exercise of his or her discretion, shall deny the asylum application of an alien found to be a refugee on the basis of past persecution if any of the following is found by a preponderance of the evidence:

(A) There has been a fundamental change in circumstances such that the applicant no longer has a well-founded fear of persecution in the applicant's country of nationality, or if stateless, in the applicant's country of last habitual residence, on account of race, religion, nationality, membership in a particular social group, or political opinion . . . .

(ii) *Burden of proof.* In cases in which an applicant has demonstrated past persecution under paragraph (b)(1) of this section, the Service shall bear the burden of establishing by a preponderance of the evidence the requirements of paragraphs (b)(1)(i)(A) or (B) of this section.

The supplementary information that accompanied the publication of the amendments to the regulations describes the intended meaning of the new regulatory language. It provides as follows:

In §§ 208.13(b)(1)(i)(A) and 208.16(b)(1)(i)(A), the regulatory language for overcoming the presumption of a well-founded fear of persecution and a threat to the applicant's life or freedom because of past persecution is changed to state that the Service must show a "fundamental change in circumstances" in order to overcome the presumption. . . . By adopting that language rather than that requiring a showing of changed country conditions to overcome the presumption, *other changes in the circumstances surrounding the asylum claim, including a fundamental change in personal circumstances, may be considered,* so long as those changes are fundamental in nature and go to the basis of the fear of persecution.

65 Fed. Reg. at 76,127 (emphasis added).

## V. ANALYSIS

We disagree with the Immigration Judge that the passage of time since the forced sterilization of the respondent's wife, coupled with the lack of enforcement of coercive family planning measures during that period, constitutes a "fundamental change" in the respondent's personal circumstances which, when considered in light of the 1996 amendments to section 101(a)(42) of the Act, is sufficient to meet the Service's burden under 8 C.F.R. § 1208.13(b)(1)(ii). The Immigration Judge's conclusion fails to take into account the continuing nature of the persecution inflicted on the respondent and his wife. Moreover, the principal reason that the respondent and his wife no longer fear a coerced sterilization or abortion, or future fines for "over-birth," is the fact that they have been rendered incapable of having children. Thus, the Immigration Judge's rationale could lead to the anomalous result that the act of persecution itself would also constitute the change in circumstances that would result in the denial of asylum to persons such as the respondent. It is highly unlikely that Congress contemplated such an interpretation when it deemed forced involuntary sterilization to be persecution on account of political opinion.

We recognize that the Immigration Judge premised his finding of changed circumstances primarily on the passage of time, and not on the act of sterilization itself. The logic of his analysis, which is amplified by the

dissenting opinion of Board Member Filppu, is that persecution in this context must be addressed in a prospective fashion. As noted by the dissent, this prospective view is not only unobjectionable, but is a bedrock principle of refugee law, codified in the redrafted provisions of 8 C.F.R. § 1208.13(b)(1). In this particular context, however, a purely prospective view, focusing on a well-founded fear of persecution in the future, would appear to limit relief under the amended refugee definition to those cases where involuntary sterilization has been threatened, but not carried out. While the dissent suggests that the finding of "changed circumstances" might not occur in cases where the involuntary sterilization has been carried out more recently, the fact remains that a completed sterilization removes any reasonable, objective basis on which to fear a future act of coerced abortion or sterilization. Fines for family planning violations could still be imposed, but our decisions in this area suggest that such fines rarely rise to the level of persecution.

To some extent, therefore, this case presents a dilemma. The respondent has, without question, sustained past persecution, which makes him eligible for asylum under the amended statute and our decisions *in Matter of X-P-T-*, *supra*, and *Matter of C-Y-Z-*, *supra*. On the other hand, the respondent has no reasonable basis to fear this form of persecution in the future, based on the very fact that he has already been persecuted. The keys to resolving this dilemma are to recognize the special nature of the persecution at issue here, and to give full force to the intent of Congress in extending asylum to those who have sustained such persecution. We consider these issues in reverse order.

First, our application of 8 C.F.R. § 1208.13(b)(1)(i)(A) must take into account the mandates of Congress with regard to this specific factual scenario. It is manifestly clear that Congress intended to make eligible for asylum those who were victims of China's coercive family planning policy, not simply those who could be victims if returned to China. *See, e.g.*, 142 Cong. Rec. H2629, H2633 (daily ed. Mar. 21, 1996) (statement of Rep. Christopher Smith). Our administrative decisions, and those of the various Immigration Courts, have granted asylum to significant numbers of persons who themselves, or whose spouses, have suffered involuntary sterilization within the meaning of the Act.

It is equally clear that our treatment of claims of this type, both before and after the enactment of the 1996 amendments, has been a well-recognized issue of asylum law. At the time 8 C.F.R. § 208.13(b)(1)(i) was amended in 2000, the amendment made to the Act by section 601(a) of the IIRIRA was well in place, and hundreds if not thousands of applicants, including many in a position comparable to this respondent, had been granted relief under its provisions. Were it the intention of the Attorney General to compel a different paradigm for deciding such cases, based on the theory that past sterilization constituted a "fundamental change in circumstances" that could preclude the granting of asylum, we expect that the regulation, or the supplementary information accompanying it, would have so stated. However, nowhere in these materials is there any discussion of, or expression of

dissatisfaction with, the adjudication of such claims in the Immigration Courts or before this Board.

Second, in light of Congress's specific intent regarding the eligibility for asylum of past victims of coercive family planning practices, we cannot conclude that such an act of persecution can constitute a "change in circumstances" for purposes of the regulation. The act of forced sterilization should not be viewed as a discrete, onetime act, comparable to a term in prison, or an incident of severe beating or even torture. Coerced sterilization is better viewed as a permanent and continuing act of persecution that has deprived a couple of the natural fruits of conjugal life, and the society and comfort of the child or children that might eventually have been born to them. In the long course of administrative rulings, Presidential directives, proposed regulations, and congressional action that has marked the consideration of asylum claims based on coerced sterilization, the profound and permanent nature of such harm has rarely, if ever, been called into question.[4] The principal issue of contention, rather, was whether such harm was on account of a ground protected under the Act. *See Matter of G-*, 20 I&N Dec. 764 (BIA 1993); *Matter of Chang*, 20 I&N Dec. 38 (BIA 1989). Congress has definitively answered that question and done so in such a way that, in our view, precludes the result urged by the Service.

Finally, while this issue is not before us, it is fair to assume that if the respondent's spouse was subjected to a forced abortion, as opposed to a forced sterilization, the possibility of the spouse becoming pregnant and being subject to another forced abortion would preclude the argument that the forced abortion constitutes a "fundamental change" in circumstances for purposes of the regulation. We do not believe that it would be consistent with the intent of Congress for us to grant asylum to those subjected to a forced abortion, while denying relief to those subjected to a forced sterilization, simply because only the former act of persecution is one capable of repetition.

## VI. CONCLUSION

In view of the foregoing, we find that the respondent has established statutory eligibility for asylum on account of past persecution and that the

---

[4] *See* IIRIRA § 601(a)(1), 110 Stat. at 3009-689 (amending the definition of a "refugee"); *Matter of G-*, 20 I&N Dec. 764 (BIA 1993); *Matter of Chang*, 20 I&N Dec. 38 (BIA 1989); Exec. Order No. 12,711, 55 Fed. Reg. 13,897-98 (Apr. 13, 1990), 1990 WL 385033 (issued on April 11, 1990, directing the Secretary of State and the Attorney General to give enhanced consideration to the asylum and withholding claims of individuals who express a fear of persecution related to a policy of forced abortion or coerced sterilization); 8 C.F.R. § 208.13(b)(1)(i)(1997); Refugee Status, Withholding of Deportation, and Asylum; Burden of Proof, 55 Fed. Reg. 2803 (Jan. 29, 1990), 1990 WL 343903 (interim regulations promulgated by the Attorney General, which were never finalized); Continued Viability of the Doctrine of Imputed Political Opinion, 93 Op. Gen. Counsel 1 (Jan. 19, 1993) (legal opinion of the General Counsel of the Service, essentially finalizing the January 1990 interim rules that had previously been superseded).

regulatory presumption of a well-founded fear of persecution arising from such past persecution has not been rebutted. Moreover, the facts cited are sufficient to support a conditional grant of asylum in the exercise of discretion. We further find that the respondent is eligible for withholding of removal. Because of our favorable disposition of the respondent's claims for asylum and withholding of removal, we need not address his eligibility for relief under the Convention Against Torture. Accordingly, the appeal will be sustained and the respondent's request for asylum and withholding of removal will be granted.

**ORDER:** The appeal is sustained. The respondent's request for asylum is granted, conditioned upon an administrative determination by the Service that a number is available for such a grant under section 207(a)(5) of the Act, 8 U.S.C. § 1157(a)(5) (2000).

**FURTHER ORDER:** The respondent's request for withholding of removal to the People's Republic of China is granted.

*DISSENTING OPINION*: Lauri Steven Filppu, Board Member, in which Lori L. Scialabba, Chairman, joined.

## I. INTRODUCTION

I respectfully dissent because I believe the majority misreads both the scope of the statute and the import of the regulation at issue here. The majority fails to recognize that this is a case of *past* harm, where an alien's eligibility for relief is governed by specific regulatory provisions focusing exclusively on either the "severity of the past persecution" or the "reasonable possibility" that the alien may suffer "other serious harm upon removal" that does not technically qualify as persecution. Aliens and Nationality; Homeland Security; Reorganization of Regulations, 68 Fed. Reg. 9824, 9834 (Feb. 28, 2003), 2003 WL 533495 (codified at 8 C.F.R. § 1208.13(b)(1)(iii)); *Matter of Y-T-L-*, 23 I&N Dec. 601, 602 n.2 (BIA 2003); *see also Matter of Chen*, 20 I&N Dec. 16 (BIA 1989) (granting relief because of the severity of past persecution).

Instead of following the regulatory tests governing relief when a well-founded fear of future persecution is absent, the majority construes the statute to preclude a denial of relief to the respondent. The majority, however, never actually focuses on the language of the statute in ruling that changed circumstances cannot exist for the spouse of a sterilization victim. Instead, it simply announces a new theory treating the respondent's past harm as a "permanent and continuing act of persecution." *Matter of Y-T-L-*, *supra*, at 607. The majority's new perpetual persecution doctrine is not supported by our past case law, and it certainly is not reflected in the regulatory structure controlling asylum determinations.

The majority's ruling has the effect of preventing adjudicators from considering particular facts bearing on traditional refugee determinations, specifically, the effect of past sterilization on the risk of future harm or the

severity of past harm. Not only is that ruling at odds with the existing regulatory structure, but it is inconsistent with basic precepts of refugee law. Those precepts involve protecting persons from future persecution and providing humanitarian relief to select individuals with severe past harm, even absent a risk of future persecution. The statute does not foreclose an application of the regulation in this case, and the majority's rationale turns our traditional asylum law on its head.

## II. BACKGROUND

The respondent and his wife had three children in China, a daughter born in February of 1983, a second daughter born in November of 1984, and a son born in December of 1985. The latter two children were in violation of China's population control program, leading to significant fines, employment difficulties, occasional public embarrassment, school tuition payments for the son, and the forced sterilization of the respondent's wife in 1986. I agree with both the Immigration Judge and the majority that the respondent has shown past persecution within the meaning of the coercive population control amendment to the definition of a "refugee" in the Immigration and Nationality Act, as construed in *Matter of C-Y-Z-*, 21 I&N Dec. 915 (BIA 1997).

As a result of this persecution, the respondent formed an intention to leave China in 1986 and succeeded in leaving in 1993, which was 7 years after his wife's sterilization and the imposition of the last fine. By that time, the fines had been paid and the relatives who loaned funds to pay the fines were evidently also repaid or had forgiven the debt. The respondent had found new employment and was able to make the tuition payments for his son. His wife had recovered from the infections she experienced after the sterilization. Further, at the time of the respondent's 2001 removal hearing, his family was continuing to live in China in the family home and his children were in school. His continuing concerns pertained to the tuition payments for his son and his son's ability to pursue a high school and college education.

The Immigration Judge found that there was "no evidence that since the sterilization and the payment of fines in 1986 that anything significant has happened to either the respondent or his family in China." The Immigration Judge also found that there had been no showing that the respondent was economically "worse off" by virtue of working at a relative's store in China in comparison to his prior employment as a farmer. Importantly, the Immigration Judge determined that the respondent had not been "persecuted" subsequent to his wife's 1986 sterilization, that there was no evidence that China would be inclined to harm the respondent or his wife today, and that the Immigration and Naturalization Service (the "Service," now the Department of Homeland Security, DHS) had met its burden under the amended asylum regulations to show that there had been a "fundamental change in circumstances" such that the respondent currently lacked a well-founded fear of persecution in China. Finally, the Immigration Judge found that the respondent would not suffer any other serious harm upon return to China and

that he lacked compelling reasons for not returning, even in the absence of a threat of any future serious harm, particularly when his wife and children had remained in China "without incident" for 15 years following the sterilization.

Neither the respondent on appeal nor the majority seriously disputes any of the Immigration Judge's factual determinations. Neither makes any attempt to show how the respondent might actually experience any meaningful harm beyond that which has already occurred to him and his wife, and the majority acknowledges that "the respondent has no reasonable basis to fear . . . persecution in the future." *Matter of Y-T-L-*, *supra*, at 606.

## III. THE MAJORITY'S DECISION

The majority does not attack, as a matter of *fact*, the Immigration Judge's determination that there has been a "fundamental change in circumstances" within the meaning of 8 C.F.R. § 1208.13(b)(1)(i)(A). Instead, the majority rules that such a finding cannot be made as a matter of law.

The majority reaches this conclusion for several reasons. It is concerned that a forced sterilization might never qualify an alien for relief and "could lead to the anomalous result that the act of persecution itself would also constitute the change in circumstances" eliminating the fear of future persecution. *Matter of Y-T-L-*, *supra*, at 605. It believes the regulatory history would be more specific if a change in our ruling in *Matter of C-Y-Z-* had been intended, and that persons suffering forced sterilizations should be treated the same as persons only suffering forced abortions. Perhaps most significantly, the majority finds sterilization to be a "permanent and continuing act of persecution" that deprives a couple of future children, such that the statute itself actually "precludes the result urged by the Service." *Id.* at 607.

There is, no doubt, some uneasiness in accepting the notion that an act of persecution, here the sterilization of the respondent's wife, can be the primary basis for denying relief on grounds that future acts of persecution will not take place. But, except for its "continuing persecution" theory, neither the majority nor the respondent points to any meaningful new harm that might befall the respondent on return to China. So, as unsettling as the notion might seem initially, it is borne out to be factually accurate on this record.

But the evidence supporting a fundamental change in circumstances is not confined to the act of sterilization. After that sterilization and the contemporaneous fine, the respondent remained in China for 7 years, paying only tuition for his son and occasionally being pointed to as an example of past "bad" behavior. The same is true for the rest of his family, except that they have remained in China and have been free from harm constituting persecution for over 15 years.

We would not likely find a fundamental change in circumstances, despite the sterilization, had China periodically imposed meaningful imprisonment on the respondent for his past population control violations, instead of merely pointing to him as an example for others not to follow. The sterilization is

obviously significant, but the case and the Immigration Judge's ruling are about much more than that one persecutory act.

Further, unless there is a bar to their consideration, the sterilization, the payment of all fines, and the subsequent treatment of the respondent and his family fit the literal "fundamental change in circumstances" language of the regulation. Under the governing regulations, this fundamental change, coupled with the absence of any reasonable fear of future persecution, means that we should assess the respondent's eligibility for relief on the strength of past persecution alone. *See Matter of Chen*, *supra*; 8 C.F.R. § 1208.13(b)(1)(iii) (requiring "compelling reasons" arising from the severity of past persecution or a reasonable possibility of other serious harm for a grant of relief where only past persecution exists). The majority does not claim that the respondent's harm is sufficient for a grant of relief on this basis alone.

## IV. THE STATUTE

I agree with the majority that the statutory language reflects an intention to accord benefits to some persons who have been sterilized. As such, it would be inconsistent with the population control amendment to the definition of a "refugee" to construe the revised regulation in such a way as to categorically deny relief to everyone who has been forcibly sterilized. But that is not what the Immigration Judge held.

The statute is intended to accord refugee status each year to 1,000 victims of certain coercive population control practices, including "a person who has been forced to abort a pregnancy or to undergo involuntary sterilization, or who has been persecuted for failure or refusal to undergo such a procedure or for other resistance to a coercive population control program." Section 101(a)(42) of the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(42) (2000) (defining "refugee"); *see also* section 207(a)(5) of the Act, 8 U.S.C. § 1157(a)(5) (2000) (limiting asylum grants and refugee admissions based on coercive population control methods to 1,000 each fiscal year).

Persons who have themselves been forcibly sterilized fall directly under the terms of the statute. As to those actual victims of forced sterilization, I understand the statute to treat their level of persecution as sufficiently severe to be considered for inclusion among the 1,000 who may get asylum, even if based on that past harm alone. Thus "a person who has been forced . . . to undergo involuntary sterilization" qualifies as a "refugee" and may well warrant, by virtue of the very nature of that past harm, one of the 1,000 refugee numbers, if available. Section 101(a)(42) of the Act.

The majority's concern that the regulation might lead to "anomalous result[s]" is easily dispelled by recognizing that the actual victims of forced sterilizations may qualify for relief on the strength of their past persecution, particularly when they flee soon thereafter or continue to experience

additional serious sanctions.[1] *Matter of Y-T-L-*, *supra*, at 605. This, also, should dispel the majority's concern about the treatment of victims of forced abortions and sterilizations. Both fall within the statute, but that does not mean all the asylum considerations are identical for both groups. Recognizing that sterilization victims may mainly be able to point to past persecution does not dictate a denial of relief.

Relief, however, should not be automatic, even for the actual victims of forced sterilizations. Traditional asylum considerations are appropriate. There are differences between a person who departs immediately after a forced sterilization, while perhaps still facing significant unpaid fines, and one who remains for many years leading an otherwise normal life and whose eventual departure is motivated mainly by economic or family reunification concerns. Victims of other forms of severe persecution, who face little likelihood of future harm, are not guaranteed asylum when they have remained for decades in the country of persecution and have been able to enjoy generally normal lives after the events leading to the past persecution.

Under the regulations governing *all* cases of past persecution, the Service bears the burden to show that the alien does not currently have a well-founded fear of future persecution by virtue of changed circumstances or that internal relocation is reasonable. I am unwilling to assume that the Service will invariably be able to meet this burden in cases where there has been a forced sterilization. Even recognizing that a forced sterilization may frequently greatly aid the Service in meeting this burden, relief is still warranted if the applicant can show compelling reasons arising from the severity of the past persecution or sufficiently qualifying "other serious harm." 8 C.F.R. § 1208.13(b)(1)(iii). And this would be true even for an alien such as the respondent, who was not sterilized, but who may suffer because of the sterilization of his spouse.

The statute, thus, does not present a legal obstacle to recognizing the fact that changed circumstances virtually have eliminated this particular respondent's fear of future persecution for population control reasons. Recognizing that a spouse's sterilization severely reduces or eliminates the risk of future "population control" persecution for the person who was *not* sterilized simply does not render the statute without meaning or lead to anomalous results when the claim for relief is based on a forced sterilization.[2]

---

[1] In this respect, the majority simply misunderstands this dissent as advocating a "purely prospective view, focusing on a well-founded fear of persecution in the future," or implying that a sterilization victim could never qualify for relief on the basis of past persecution alone. *Matter of Y-T-L-*, *supra*, at 606. But I do acknowledge that the *spouse* of a victim may often not qualify for relief when the actual victim remains in the country of persecution, when circumstances reflect a "fundamental change," and when many years have passed since either the victim or the spouse have experienced anything approaching what we would deem to be "persecution."

[2] A person who has *not* been sterilized does not qualify literally as "a person who has been forced . . . to undergo involuntary sterilization." Section 101(a)(42) of the Act. The respondent suffered fines, the loss of his agricultural plot, the sterilization of his wife, and other

(continued...)

The majority is correct that the statute equates persecution arising from a coercive population control program as being persecution "on account of political opinion." The statute, however, does not direct that persons suffering such persecution be exempt from the normal rules that apply to all persons who have suffered past persecution on account of political opinion but who lack a reasonable fear of future persecution. Instead, it is the majority that concocts a new theory of perpetual persecution to justify that exemption.

## V.  THE MAJORITY'S NEW THEORY

The majority's deviation from long-standing principles of asylum law, and from the analysis directed by the regulations, is most pronounced in its declaration that forced sterilization "is better viewed as a permanent and continuing act of persecution." *Matter of Y-T-L-*, *supra*, at 607. The majority's perpetual persecution analysis is simply not consistent with either the case law or basic precepts of asylum law.

For example, in *Matter of Chen*, *supra*, at 20, we accepted the alien's account that, because of his past experiences in China, he was "physically debilitated, must wear a hearing aid due to his head injury, [was] always anxious and fearful, and [was] often suicidal." We nonetheless found that Chen lacked a well-founded fear of future persecution, but granted relief because of the severity of the past persecution. Importantly, in doing so, we did not declare that Chen's ongoing physical disabilities and continuing psychological trauma amounted to "a permanent and continuing act of persecution," although the daily manifestations of his past persecution could easily have been so described.

I am also not aware that we find perpetual persecution from the death of a family member who was killed to inflict harm on the asylum applicant or even from permanent physical injuries to the applicant himself, such as loss of sight or loss of a limb. Certainly, severe injuries from persecution can give rise to relief for past persecution. The majority's perpetual persecution approach, however, would confine our traditional past persecution analysis to cases where the past injury had no lingering effect, or the majority will need to explain why a deprivation of the ability to procreate is to be given special treatment in comparison to other permanent injuries that can arise from acts of persecution.

Indeed, the majority's continuing or perpetual persecution concept would seem to override even the type of change in country conditions (such as an abandonment of population control measures by China) that we recognized as sufficient to meet the prior regulatory test that we found to govern our ruling

---

[2] (...continued)

lesser problems. It is far easier to treat the respondent as someone "who has been persecuted . . . for other resistance to a coercive population control program" as a result of the steps he and his wife took to continue to have children despite the various enforcement efforts of, and the sanctions leveled by, Chinese authorities.

in *Matter of C-Y-Z-*.  Furthermore, this new theory means there can be no country of refuge for the respondent.  He will experience his "permanent and continuing persecution" in the United States, in China, or anywhere he may go.  Yet the majority simply fails to grapple with the anomaly it creates from the standpoint of traditional asylum law.

This anomaly is also apparent in the majority's grant of withholding of removal to the respondent.  As is relevant to this case, the regulations governing withholding of removal parallel those applicable to asylum. Taken to its logical, but I would submit absurd, conclusion, the majority's continuing persecution theory would seem to require us to grant withholding of removal to countries other than China.  For example, if the respondent had been a landed immigrant in Canada before coming to the United States, he would likely be denied asylum because he had "firmly resettled."  *See* section 208(b)(2)(A)(vi) of the Act, 8 U.S.C. § 1158(b)(2)(A)(vi) (2000); 68 Fed. Reg. at 9834 (codified at 8 C.F.R. § 1208.15).  Under the majority's theory, however, Canada is unable to prevent China's "continuing" persecution of the respondent, and neither firm resettlement nor discretionary considerations form a basis for denying withholding of removal when persecution continues for the victim.

Asylum law is primarily about protecting people from future harm and, in select cases, providing humanitarian relief for severe past harm by itself. The goal of protection is not served by providing protection to someone who is not actually in need of protection.  The goal of providing humanitarian relief in select cases is not served if the individual is not actually deserving of humanitarian relief.

As serious as forced sterilization is, the majority offers no sound reason to give it special treatment among the range of atrocities having permanent and ongoing consequences that victims of persecution may be forced to endure their entire lives.  The continuing nature of past harm is certainly appropriate to weigh as a factor in a traditional *Chen*, past persecution assessment.  The continuing nature of past harm, however, is not a basis for circumventing the regulations requiring a past persecution assessment when there is little or no likelihood of future persecution as a matter of fact.

## VI.  THE REGULATION

This brings us to the heart of what this case is really about, specifically, the proper interpretation of the current regulation.  The respondent has suffered past persecution on account of a protected ground.  The respondent therefore benefits from a presumption of future persecution pursuant to 8 C.F.R. § 1208.13(b)(1).  This presumption, however, is rebuttable.  In *Matter of C-Y-Z-*, *supra*, we found that the presumption was *not* rebutted under the test then contained in the regulations.  The regulation at issue in *Matter of C-Y-Z-*, *supra*, 8 C.F.R. § 208.13(b)(1)(i) (1997), provided in relevant part:

> If it is determined that the applicant has established past persecution, he shall be presumed also to have a well-founded fear of persecution unless a preponderance of the evidence

establishes that since the time the persecution occurred conditions in the applicant's country of nationality or last habitual residence have changed to such an extent that the applicant no longer has a well-founded fear of being persecuted if he were to return.

Based on this language, we determined that the regulatory presumption could be rebutted only by a showing that overall conditions in the applicant's country had changed. *Matter of C-Y-Z-*, *supra*, at 919. Our ruling would not permit the presumption to be rebutted through a showing of changes in the personal circumstances of the applicant. *Id.*

The regulation at issue in *Matter of C-Y-Z-*, *supra*, however, and the regulation governing the effect of past persecution on an application for withholding of removal, were amended through the publication of a final rule on December 6, 2000, which became effective on January 5, 2001. *See* Asylum Procedures, 65 Fed. Reg. 76,121, 76,133 (Dec. 6, 2000), 2000 WL 1780075. The regulatory history of the current provision supports use of any and all evidence in assessing the risk of future persecution and points to the need for a "past persecution" focus in cases such as that of the respondent.

The majority is correct that the actual outcome in *Matter of C-Y-Z-*, *supra*, was not specifically disavowed during the rule-making process. But its rationale was discussed and criticized in the supplementary information accompanying the notice of proposed rule making.

The proposed rule would have required a discretionary denial of asylum if the Immigration Judge found by a preponderance of the evidence simply that "the applicant does not face a reasonable possibility of future persecution in the applicant's country" because of a qualifying ground. Executive Office for Immigration Review; New Rules Regarding Procedures for Asylum and Withholding of Removal, 63 Fed. Reg. 31,945, 31,949 (proposed June 11, 1998), 1998 WL 302672. The supplementary information in the proposed regulatory package explained:

> This rule also makes clear that, in determining whether there is a reasonable possibility of future persecution, the asylum officer or immigration judge may rely on any evidence relating to the possibility of future persecution against the applicant. This is an important change in light of the recent Board decision in *Matter of C-Y-Z[-]*, [Interim] Decision #3319 (BIA 1997), which raises questions about how the existing regulation should be interpreted. In that decision, the Board addressed the case of an applicant who had suffered past persecution and was therefore entitled under the existing regulation to the presumption of a well-founded fear of future persecution. [T]he Board interpreted 8 CFR 208.13(b)(1)(i) to preclude the consideration of any factors other than changed country conditions in determining whether the presumption of a well-founded fear was rebutted. In *Matter of Chen*, however, which the existing regulatory provisions were intended to codify, the Board stated that, in cases where an applicant establishes past persecution, asylum may be denied as a matter of discretion if there is little likelihood of future persecution. To avoid any uncertainty about whether there is tension among the existing regulation, *Matter of Chen*, and *Matter of C-Y-Z[-]*, we are changing the regulation so that it clearly allows consideration of any evidence, or lack thereof, bearing on future persecution in such cases.

63 Fed. Reg. 31,946-47 (notice of proposed rule making).

The proposed change in the regulations and the accompanying explanation were not aimed particularly at population control cases, such as the one now before us. Rather, both the proposed rule and the final rule are aimed at all asylum cases, regardless of the type of past persecution experienced by the victim. The need for a regulatory revision covering all cases of past persecution arose because *Matter of C-Y-Z-* construed the former regulation to narrowly focus a "changed circumstances" assessment exclusively on changed country conditions, and thus was seen as not being in keeping with *Matter of Chen*, *supra*. Under the regulatory interpretation followed in *Matter of C-Y-Z-*, for example, an alien's switch in political parties which resulted in his no longer being persecuted could not be taken into account in determining whether the past persecution presumption had been rebutted.

The final rule did not adopt the precise regulatory language of the proposed rule in relation to the regulation at issue here. But nothing in the final rule-making package reflects a retreat from the explanation accompanying the proposed rule as to the reasons why a change was generally needed. The majority, in my view, seriously misstates the history of this regulatory change in its assertion that the Attorney General did not intend a "different paradigm for deciding" cases of the sort we now confront. *Matter of Y-T-L-*, *supra*, at 606.

Rather, a different, or at least a modified paradigm was intended for *all* cases. Nowhere in that regulatory history is there a suggestion that "forced sterilization" cases are exempt from the new rules.

The final rule amended 8 C.F.R. § 208.13(b)(1)(i) (2001) to provide, in pertinent part, that

> an immigration judge . . . shall deny the asylum application of an alien found to be a refugee on the basis of past persecution if any of the following is found by a preponderance of the evidence:
>     (A) There has been a fundamental change in circumstances such that the applicant no longer has a well-founded fear of persecution . . . on account of race, religion, nationality, membership in a particular social group, or political opinion . . . .

The supplementary information, as the majority acknowledges, explains in part:

> [T]he regulatory language for overcoming the presumption of a well-founded fear of persecution and a threat to the applicant's life or freedom because of past persecution is changed to state that the Service must show a "fundamental change in circumstances" in order to overcome the presumption. . . . By adopting that language rather than that requiring a showing of changed country conditions to overcome the presumption, *other changes in the circumstances surrounding the asylum claim, including a fundamental change in personal circumstances, may be considered*, so long as those changes are fundamental in nature and go to the basis of the fear of persecution.

65 Fed. Reg. at 76,127 (emphasis added). The respondent's change in circumstances has significantly affected his prospects for being persecuted in the future in China. Taking account of that change, thus, is consistent both with the stated purpose behind the proposed change of allowing the consideration of "any evidence," 63 Fed. Reg. at 31,947, and with the final

rule's specific explanation that changes in personal circumstances may be considered.

Nevertheless, there is a difference in language between the proposed rule and the final rule. And, the regulatory history does not explain the import of that change *specifically* in relation to coercive population control cases involving sterilizations. The proposed rule had focused simply on whether the applicant would currently face "a reasonable possibility of future persecution" and did not require that there be *any* change in circumstances since the past persecution. 63 Fed. Reg. at 31,946. The language of the final rule, however, was adopted to ensure that it "complies with our international obligations" and to track one aspect of the statutory language respecting termination of asylum. 65 Fed. Reg. at 76,127; *see also* section 208(c)(2)(A) of the Act, 8 U.S.C. § 1158(c)(2)(A) (2000) (providing for termination of asylum to an alien who was no longer a refugee "owing to a fundamental change in circumstances").

The significance of this change appears to lie in its preservation of asylum eligibility for persons who themselves have experienced actual past persecution, even when most members of their affected group, such as their religious denomination, may not be able to show a "reasonable possibility of future persecution" by virtue of long-standing and unchanged conditions in their homeland. *See, e.g.*, *Matter of O-Z- & I-Z-*, 22 I&N Dec. 23 (BIA 1998) (granting asylum to Jewish victims of past persecution in the Ukraine where country condition evidence showed no change in circumstances, but may not have independently supported a "reasonable possibility of future persecution" generally for Jewish residents of the Ukraine).

The change between the proposed and final rule was not undertaken with the announced purpose of affecting the result in coercive population control cases or any other case where an act of past persecution may be relevant to a changed circumstances assessment. Rather, as with the proposed rule itself, which was not limited to population control cases, the change in language contained in the final rule was intended to apply to *all* cases of past persecution. The stated goal of the regulatory change, as set forth in the notice of proposed rule making, of "allow[ing] consideration of any evidence, or lack thereof, bearing on future persecution," was not retracted or even called into question. 63 Fed. Reg. at 31,947.

The majority's ruling effectively precludes consideration of important evidence respecting the likelihood of future persecution. The language of the current regulation, however, was not adopted to preclude the consideration of some evidence bearing on the possibility of future persecution. It was not adopted to achieve a purpose contrary to, or despite, the traditional "protection" and "humanitarian" goals of asylum law.

In sum, the point of a change in the old regulation was to shift away from the approach we had taken in *Matter of C-Y-Z-* when the core of any claim is in actuality based on *past* persecution. Instead of a limited focus on "changed country conditions," the revised regulation directs that the examination extend to the full range of considerations and the use of any

evidence bearing on whether there has been a fundamental change and whether there currently exists a well-founded fear of future persecution. Importantly, the regulatory history does not reflect an intention to prohibit consideration of any particular fact that may bear on these questions.

## VII.  CONCLUSION

The statute does not foreclose application of the regulations in cases of forced sterilizations, and the regulations themselves reflect that they were intended to apply to all cases, without exemption.  As I agree with the Immigration Judge's rulings, I would dismiss the appeal.

*DISSENTING OPINION*:  Roger A. Pauley, Board Member

The majority hold that, under *Matter of C-Y-Z-*, 21 I&N Dec. 915 (BIA 1997), the forced sterilization of one's spouse cannot constitute a "fundamental change in circumstances" under 8 C.F.R. § 1208.13(b)(1)(i)(A). *See* Aliens and Nationality; Homeland Security; Reorganization of Regulations, 68 Fed. Reg. 9824, 9834 (Feb. 28, 2003), 2003 WL 553495; *Matter of Y-T-L-*, 23 I&N Dec. 601, 602 n.2 (BIA 2003).  On the dual assumptions that *Matter of C-Y-Z-* was correctly decided and that, if so and properly applied, it extends to this respondent, I join the dissenting opinion of Board Member Filppu, which convincingly exposes and explains the flaws in the majority's reasoning and result.

However, I dissent, as well, on other grounds.  I would not reach the narrow issue of the meaning of the above regulation without first seeking additional briefing and/or oral argument from the parties on the threshold questions of the continued viability of *Matter of C-Y-Z-* and its scope.[1]  As is well known, *Matter of C-Y-Z-* was certified to the Attorney General in 1998, but no decision has yet been rendered at that level.

The continued viability of *Matter of C-Y-Z-*, and its rationale, are inextricably involved in the outcome of this case.  I understand our ruling in *Matter of C-Y-Z-* to be based on the theory that the persecution of one spouse by forced sterilization is imputed to the other.  I would ask the parties to address the question whether this rationale is consistent with the statute and, if not, bearing in mind considerations of stare decisis, whether that decision should be overruled.

In briefly adumbrating some of the issues on the merits on which I would expect further briefing, I note a pivotal, but heretofore insufficiently appreciated, fact that Congress, in adding the coercive population control

---

[1]  I recognize that the Immigration and Naturalization Service (the "Service," now the Department of Homeland Security, DHS) chose not to raise these questions.  But, as an appellate adjudicatory body, the Board has discretion not to accept the case in the strategic litigative posture presented to it, in an apparent attempt to isolate a particular question for resolution, and instead to raise, and seek enlightenment from the parties on, other threshold and potentially dispositive issues.

provisions to section 101(a)(42) of the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(42) (Supp. II 1996), elected not to create a new protected ground. Instead, it provided that a "person who has been forced to abort a pregnancy or to undergo involuntary sterilization . . . shall be deemed to have been persecuted on account of political opinion." *Id.* That statutory choice would seem a strong indication that Congress anticipated and intended that such coercive population control claims would be adjudicated on the same basic principles that apply to other "political opinion" claims. Yet *Matter of C-Y-Z-* is (at least arguably) at odds with such notions of equivalent treatment and analysis.

For example, suppose a political "odd couple" who are legally married in China; the wife is a rabid anticommunist, while the husband is a staunch supporter of communism and the regime. Suppose further that the wife one day makes a widely disseminated anticommunist speech, is tried and convicted therefor, and sentenced to imprisonment for 30 years. But the husband's loyalty is not questioned and he is not personally harmed. If the husband later, while on a business trip to this country, decides to seek asylum on the basis of his wife's persecution, we would not find "past persecution" or grant his claim. It is fundamental that, unless persecution of another on account of political opinion is directed at an asylum applicant, which is not the situation in my example, such persecution must be personal to the applicant, although the harm to the persecuted individual may also result in grievous harm to the applicant, in my hypothetical the loss of consortium of his spouse (including the opportunity to have children) for 30 years. I would ask the parties to explain why they believe or don't believe that Congress intended that Chinese population control claims should constitute an exception to this principle.

Assuming that *Matter of C-Y-Z-* would survive such reconsideration, I would also seek further briefing and/or oral argument on the scope of that ruling as it affects this respondent's eligibility for asylum. The salient facts in this case show that the respondent and his spouse entered into a traditional marriage in 1981, and then had three children, the last being born in 1985. Thereafter, the respondent registered his marriage in 1991. In order to find that, on these facts, *Matter of C-Y-Z-* applies to enable the respondent to assert past persecution successfully, that case must be construed as extending either (1) to persons whose marriages are evidenced only by a traditional ceremony in China (without a requirement that such marriages be legally recognized by that country) or, if not, (2) to persons who ultimately registered their marriage with the forcibly sterilized spouse, but who were not legally married at the time that persecutive act occurred. I regard both of these important issues as unresolved[2] and have seen plausibly reasoned decisions of Immigration Judges taking opposite positions with respect to each.

---

[2] Our opinion in *Matter of C-Y-Z-* did not make clear whether the alien's registration of his marriage occurred before or after his wife's forced sterilization. *See Matter of C-Y-Z-*, *supra*, at 915-16. Whatever the record in that case might show, it is clear that we never focused on the issue and cannot be deemed to have resolved it.

Accordingly, I would not grant asylum in this case without resolving the underlying question whether the respondent is eligible to assert past persecution under *Matter of C-Y-Z-*.

I therefore respectfully dissent.