**GUANG RI LI, Petitioner**

v.

**ATTORNEY GENERAL OF the UNITED STATES, Respondent.**

No. 05–1668.

United States Court of Appeals, Third Circuit.

Argued June 13, 2006.

Filed: June 30, 2006.

Thomas V. Massucci (Argued), New York, NY, Attorney for Petitioner.

Daniel S. Goodman (Argued), United States Department of Justice, Appellate Section, Washington, DC, Douglas E. Ginsburg, John M. McAdams, Jr., United States Department of Justice, Office of Immigration Litigation, Washington, DC, Mary Ann Snow, United States Department of Justice, Office of International Affairs, Washington, DC, Attorneys for Respondent.

Before: FISHER, GREENBERG and LOURIE,* Circuit Judges.

---

* The Honorable Alan D. Lourie, United States Circuit Judge for the Federal Circuit, sitting by designation.

OPINION OF THE COURT

FISHER, Circuit Judge.

Guang Ri Li sought asylum in this country on the grounds that he and his wife had been forcibly sterilized in their native China. The immigration judge, in a decision adopted by the Board of Immigration Appeals, refused to credit these allegations because of perceived inconsistencies between Li's testimony at the hearing and his statements in prior proceedings. Li now petitions for review by this Court, arguing that the immigration judge misconstrued the record and ignored critical evidence supporting his claim. We agree and will grant the petition.

I.

Removal proceedings were commenced against Li in 1996, after he entered the United States with an invalid passport. Li conceded deportability but filed an application for asylum claiming persecution based on religion and political opinion.

A hearing on the application was held in July 1996. Li was the sole witness. He testified that he, his wife, and their two children had been persecuted in China based on their Christian faith. He could, however, recall only one actual incident of intimidation: In 1985, he had been arrested and detained for ten days for allowing a priest to deliver a sermon in the family home.

Li also testified that his family had been persecuted based on their opposition to the one-child policy of the Chinese government. He recalled that, after the birth of their first child, authorities "requested" that his wife undergo sterilization and insertion of an intrauterine device ("IUD"). He and his wife went into hiding but, after the birth of their second child, his wife was abducted by Chinese officials and sterilized, in September 1989.

Both counsel for the government and the immigration judge questioned Li whether he had himself been sterilized. Li's responses were vague. When the judge asked Li if he or his wife had undergone sterilization, Li replied: "My wife was sterilized." When counsel for the government asked Li directly if he had been sterilized, Li replied: "Because the man in the family usually has to work ... [w]hen we didn't have any choice then she underwent the procedure."

The immigration judge denied the application for asylum. Focusing primarily on the claim of religious intimidation, the judge found that the ten-day period of detention that Li had allegedly suffered for assisting the priest did not give rise to a well-founded fear of persecution.

Li, acting pro se, appealed. He recounted, in an addendum to the appeal, the facts supporting his claim of persecution based on opposition to the one-child policy. The addendum asserts that Li's wife had been required to undergo an IUD insertion after her first pregnancy and had been threatened with sterilization after her second pregnancy. The addendum does not state expressly that Li's wife was actually sterilized, but it does indicate that she "got a pain in [her] waist because of the sterilization," implying that the procedure was performed.

In the addendum Li also revealed, for the first time, that he had been sterilized. He stated that, shortly after his wife's detention, Chinese officials arrested and transported him to a hospital where the procedure was performed. He did not disclose this fact previously, he explained, because "it was humiliating" and "[he] was ashamed."

The Board agreed that Li had failed to establish persecution based on religious belief, but held that the immigration judge

had failed to give adequate consideration to Li's claim of persecution based on opposition to the one-child policy. It noted that, under the Immigration and Naturalization Act ("INA"), an alien is deemed to have suffered "persecution"—establishing eligibility for asylum—if he or his spouse has suffered forcible sterilization. Although Li's failure to mention his own sterilization during the first hearing cast doubt on his credibility, the Board concluded that he could still demonstrate eligibility for asylum by substantiating his allegations through "medical documentation."

The Board identified another discrepancy between the allegations in the addendum and Li's prior testimony. Specifically, it remarked that, while Li had previously "claimed that his wife was forcibly sterilized," he "presently appears to allege that his wife was not sterilized."

Following remand, a second hearing on the asylum application was held in September 2001. At the start of the hearing, counsel for Li introduced a letter from Bruce B. Sloan, M.D., a urologist. The letter, dated August 2001, indicates that Dr. Sloan had examined Li and had determined that Li had, "without question, undergone bilateral vasectomy." The government objected to the letter, noting that Dr. Sloan had not been called to testify. The immigration judge overruled the objection and admitted the document, stating that he would give it "whatever weight [the court] deem[s] advisable." He remarked, however, that he could not be sure from the letter alone whether Dr. Sloan had actually examined Li, whether Li had undergone the vasectomy voluntarily, or when the vasectomy had been performed.

Li was, once again, the only witness. He testified that he had been married in 1987—contrary to his testimony in the first hearing that he had been married in 1981—and that his wife and children remain in China. Counsel for the government asked Li to explain why a marriage certificate, introduced earlier in the hearing, indicated that his marriage had been registered in April 1990. Li explained that he had not registered his marriage immediately, but had waited until Chinese authorities required him to do so, in 1990.

Li recounted the allegations underlying his claim of forcible sterilization. He testified that, after his wife became pregnant for a second time, officials attempted to force her to have an abortion, but the family fled to another province. When they returned to their home in October 1989, after the child's birth, family planning officers confronted them and "dragged" Li's wife to a hospital for sterilization. She pleaded with hospital officials that she had a heart condition and could not endure the procedure. Doctors initially agreed; however, after cadres were unable to apprehend Li for sterilization, they directed that his wife be sterilized regardless of the risk to her health. The operation was performed three days after Li's wife had initially been detained.

Notwithstanding the sterilization of his wife, cadres continued to pursue Li. He explained that they intended to "punish" him for refusing to obey the prior sterilization order. Li was subsequently captured and forcibly sterilized. He could not remember the exact date of the procedure, but said that it was "sometime early in October."

Li conceded that he had not mentioned his own sterilization during the previous hearing, but offered two reasons for this omission. First, Li said that his original counsel had advised him that, "to make things easier" and avoid "a lot of questions," he should mention only his wife's sterilization. Second, Li indicated that he did not "like to have people to know" about

the sterilization because it is not "such a glorious thing[ ]."

The immigration judge rejected Li's testimony, concluding that Li had "intentionally attempted to deceive this [c]ourt" and denying the application for asylum as "frivolous." The judge found that Li had lied in the first hearing, during which he had stated that he had not been sterilized, and that he had changed the basis of his claim in the prior appeal, during which he had asserted that his wife had not been sterilized. The judge also identified several "gross disparities" between Li's most recent testimony and his prior statements: Li had testified that he was married in 1987, but he had stated at the first hearing that he was married in 1981; Li had testified that he was arrested by Chinese officials, but neither the asylum application nor a criminal clearance report from China[1] reflects any arrests; Li had testified that he was a Christian, but his asylum application indicates that a question regarding religious affiliation is "not applicable"; Li had testified that his wife was sterilized in October 1989, but he had stated at the first hearing that she was sterilized in September 1989. The immigration judge also noted that Li could not remember the exact date on which he had been sterilized: "It seems implausible ... that [he] would not recall with more precision when such a traumatic event occurred in his life." The judge did not mention Dr. Sloan's letter.

The Board affirmed. It adopted the decision of the immigration judge in full except for the finding that Li's application was "frivolous."

This timely petition for review followed. Li argues that the adverse credibility determination is not supported by substantial evidence and that the immigration judge and the Board "ignored" evidence that he had been sterilized. We have jurisdiction over the petition under 8 U.S.C. § 1252..

## II.

■ The dispositive question in this case is whether the immigration judge erred in discounting Li's testimony that he and his wife had been forcibly sterilized by Chinese authorities. An alien who has suffered forcible sterilization, or whose spouse has suffered forcible sterilization, is deemed to have a well-founded fear of persecution and to be per se eligible for asylum.[2] *See In re Y–T–L–,* 23 I. & N. Dec. 601, 605–08, 2003 WL 21206539 (BIA 2003); *In re C–Y–Z–,* 21 I. & N. Dec. 915, 918–19, 1997 WL 353222 (BIA 1997). Because Li no longer claims eligibility for asylum based on religious persecution, the finding that he fabricated his testimony regarding his and his wife's sterilization effectively quashed his chance for relief from removal.

---

1. It is not clear why the immigration judge considered the criminal clearance report in his opinion. He had previously ruled, at the start of the second hearing, that the report had not been properly authenticated and "cannot be considered by the [c]ourt."

2. Because neither party challenges this proposition, which was adopted by the Board in *In re Y–T–L–,* 23 I. & N. Dec. 601, 2003 WL 21206539 (BIA 2003), and *In re C–Y–Z–,* 21 I. & N. Dec. 915, 1997 WL 353222 (BIA 1997), we will assume, as we have done in other opinions, *see, e.g., Chen v. Ashcroft,* 381 F.3d 221, 227 (3d Cir.2004), that it represents a permissible interpretation of the INA. *See also, e.g., Cao v. U.S. Dep't of Justice,* 421 F.3d 149, 155–56 (2d Cir.2005) (approving of holding in *Y–T–L–* that proof of an alien's forcible sterilization gives rise to an "irrebutable presumption" of a well-founded fear of future persecution); *Lin v. U.S. Dep't of Justice,* 416 F.3d 184, 191–92 (2d Cir.2005) (questioning but not rejecting holding in *C–Y–Z–* that proof of a spouse's forcible sterilization can support an alien's claim of persecution).

The immigration judge based his conclusion on perceived discrepancies between Li's testimony and prior statements. Many of these, however, do not bear up under a close review of the record.

The immigration judge found that Li had lied to the court during the first hearing by stating that he had not suffered sterilization. But the record of the first hearing shows that Li never expressly denied that he had undergone the procedure. Li was asked whether he or his wife had suffered sterilization; Li replied: "My wife was sterilized." This response, although omitting Li's own sterilization, was not untruthful. At another point, Li was asked directly whether he had himself been sterilized; Li replied: "Because the man in the family usually has to work . . . [w]hen we didn't have any choice then she underwent the procedure." This statement is simply unresponsive. It indicates that Li's wife had been sterilized and obliquely suggests that men are usually not sterilized because they "ha[ve] to work," but it does not state whether or not Li himself was sterilized.

Nothing in Li's testimony or his other submissions expressly denies that he underwent sterilization. Rather, they merely fail to acknowledge the fact. Li was evasive, but he did not lie to the court.

The immigration judge also found that Li had alleged in his prior appeal, contrary to his testimony, that his wife had not been sterilized. Once again, this finding is inaccurate. The addendum to the appeal asserts that Li's wife was threatened with sterilization after her second pregnancy but that officials initially declined to perform the procedure due to her heart condition. Although the addendum does not state expressly that Li's wife was sterilized, it does indicate that she "got a pain in [her] waist because of the sterilization." This necessarily implies that she underwent the procedure.

There is no discrepancy between the addendum and Li's testimony. In both, Li asserted, either explicitly or implicitly, that his wife had undergone forcible sterilization by Chinese officials following the birth of their second child. The immigration judge and the Board erred in finding otherwise.

Other inconsistencies identified by the immigration judge likewise do not provide a sufficient basis for discounting Li's testimony. Li's differing responses for the date of his marriage are troubling, but they do not cast serious doubt on his allegations of forcible sterilization, particularly since there is apparently no dispute that Li was in fact married. *See, e.g., Senathirajah v. INS*, 157 F.3d 210, 221 (3d Cir. 1998) ("Minor inconsistencies in the record such as discrepancies in dates which reveal nothing about an asylum applicant's fear for his safety are not an adequate basis for an adverse credibility finding.") (quoting *Vilorio–Lopez v. INS*, 852 F.2d 1137, 1141 (9th Cir.1988)). Li's inability to remember the precise date of his sterilization is hardly surprising, given that more than a decade had elapsed since the procedure. And the one-month discrepancy between the dates offered by Li for his wife's sterilization is so minor as to be irrelevant. *See Senathirajah*, 157 F.3d at 221; *cf. Cham v. Attorney General*, 445 F.3d 683, 691 (3d Cir.2006) (criticizing the same immigration judge for focusing on a "one-month mistake about an event which occurred years earlier"). Neither these perceived inconsistencies, nor others identified by the immigration judge, supports the adverse credibility determination.[3] *See, e.g., Sena-*

---

3. For example, while the immigration judge found fault in the fact that Li's alleged arrests were not mentioned in his application for asylum or the criminal clearance report, the

*thirajah,* 157 F.3d at 221; *see also Berishaj v. Ashcroft,* 378 F.3d 314, 323–25 (3d Cir.2004).

Casting further doubt on the agency's decision is its failure to address critical evidence bolstering Li's account. The immigration judge admitted into the record, over the government's objection, the letter authored by Dr. Sloan stating that Li had, "without question," undergone a vasectomy. Although the letter does not indicate when or how the procedure took place, it clearly supports Li's claim of sterilization.

Yet, the letter was not mentioned by the immigration judge or the Board in their opinions. The only point at which it was discussed was during the immigration hearing, when the immigration judge admitted the document and noted that he could not be sure from it alone whether Li had undergone the vasectomy voluntarily or when the vasectomy had been per-

formed. But these questions were never resolved, or even raised, in the later opinions. It is not possible for us to determine whether and for what reason the immigration judge and the Board discounted the letter.

 This flaw requires remand.[4] The immigration judge found that Li had fabricated his claim of sterilization; however, the letter demonstrates that Li did in fact have a vasectomy. *Cf. Toure v. Attorney General,* 443 F.3d 310, 326 (3d Cir.2006) (stating that, when the immigration judge does not state that testimony is discredited, we assume that it was credited). The immigration judge's failure to reconcile the letter with his arguably contrary finding warrants remand of the case.[5] *See Caushi v. Attorney General,* 436 F.3d 220, 226 (3d Cir.2006); *Voci v. Gonzales,* 409 F.3d 607, 613–14 (3d Cir.2005); *Awolesi v. Ashcroft,* 341 F.3d 227, 229 (3d Cir.2003); *Kayembe*

judge failed to consider Li's plausible explanations for these omissions. *See Caushi v. Attorney General,* 436 F.3d 220, 226 (3d Cir. 2006) (stating that the immigration judge is required "to consider an alien's explanations for any perceived inconsistencies in his testimony before deciding upon the alien's credibility") (citing *Campos–Sanchez v. INS,* 164 F.3d 448, 450 (9th Cir.1999)); *see also supra* note 1 (noting that the immigration judge had previously ruled the document inadmissible). And, the notation in the asylum application suggesting that a question regarding religious affiliation is "not applicable"—upon which the immigration judge seized as further proof of duplicity—is clearly a typographical error, as other statements in the application plainly describe Li as a Christian.

**4.** Counsel for Li frames the immigration judge's failure to address the letter as a due process violation. We need not resolve this constitutional question, *see, e.g., Cham,* 445 F.3d at 693, in light of our decision to remand the case on statutory grounds.

**5.** This is not to say that the immigration judge was required to find Li credible or to grant him asylum. That Li failed to mention his

own sterilization during the first hearing— even if he did not actually lie—calls his credibility into question. *See, e.g., Xie v. Ashcroft,* 359 F.3d 239, 243 (3d Cir.2004). Likewise, several of the inconsistencies between Li's testimony and his prior statements could ostensibly serve as a basis for an adverse credibility determination. And the immigration judge might decide that, assuming Li had a vasectomy, the procedure was most likely performed voluntarily or after Li had left China.

But these possibilities are, at this point, mere speculation. The credibility of witnesses and conflicts in the evidence are matters to be resolved in the first instance by the immigration judge and the Board. *Cao v. Attorney General,* 407 F.3d 146, 161 n. 4 (3d Cir.2005) (citing *INS v. Ventura,* 537 U.S. 12, 16–17, 123 S.Ct. 353, 154 L.Ed.2d 272 (2002)); *Zhang v. Gonzales,* 405 F.3d 150, 156–57 (3d Cir.2005); *see also Butt v. Gonzales,* 429 F.3d 430, 437–38 (3d Cir.2005) (stating that, if the record is insufficient to support an adverse credibility determination, the Court should remand the case to allow the agency "an opportunity to revisit the credibility issue ... without regard to the prior adverse credibility determination").

*v. Ashcroft,* 334 F.3d 231, 238–39 (3d Cir. 2003); *see also Korytnyuk v. Ashcroft,* 396 F.3d 272, 291–92 (3d Cir.2005).

## III.

The immigration judge and the Board, in denying the application for asylum in this case, relied on questionable discrepancies in the record and ignored critical evidence supporting the claim of forcible sterilization. Remand is necessary to allow the agency to reconsider the record and provide a full explanation of its findings.

For these reasons, the petition for review will be granted and this case will be remanded to the Board for further proceedings consistent with this opinion.