**XIU YING ZHAO, Petitioner,**

v.

**John ASHCROFT, Attorney General of the United States.**

No. 03–1267.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) April 15, 2004.

Decided April 16, 2004.

Henry Zhang, Zhang & Associates, New York, NY, for Petitioner.

Anthony W. Norwood, Earle B. Wilson, Linda S. Wernery, Terri J. Scadron, John M. McAdams, Jr., United States Department of Justice, Office of Immigration Litigation, Washington, DC, for Respondent.

Before: RENDELL, STAPLETON and LAY,* Circuit Judges.

### OPINION OF THE COURT

RENDELL, Circuit Judge.

Zhao Xiu Ying, a citizen of the People's Republic of China, challenges the denial of her applications for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). An immi-

---

* Honorable Donald P. Lay, Senior Circuit Judge for the Eighth Circuit, sitting by desig-       nation.

gration judge ("IJ") denied Zhao's applications on August 1, 2000, and ordered her removed to China. The Board of Immigration Appeals ("BIA") affirmed the IJ's decision without opinion, pursuant to 8 C.F.R. § 1003.1(e)(4), on October 2, 2002. We have jurisdiction to entertain Zhao's timely petition for review under 8 U.S.C. § 1252(a)(1). Because we conclude that substantial evidence supported the IJ's decision, we will deny the petition for review.

## I.

We will recite only those facts that are relevant to the issues before us, as we write exclusively for the parties. Zhao married her husband in 1982, and the couple resided in Wenzhou City. When she gave birth to her first child in 1983, she was fined under China's population control policies for failing to obtain a birth permit. According to Zhao, she was also informed at that time that she had to have an IUD inserted to prevent her from having additional children. However, she testified at her asylum hearing that she avoided the procedure by bribing the director of her local family planning office. Zhao gave birth to her second child in 1985. The family planning policies then required that Zhao be sterilized, but Zhao testified that she persuaded local officials, upon posting a security deposit, to insert an IUD and fine her again instead. After the IUD was inserted, she was required to have checkups twice a year – each June and December.

In May of 1988, Zhao secretly had her IUD removed by a distant relative who was a doctor. She testified that she went into hiding after becoming pregnant a third time, and she gave birth to her youngest child on September 3, 1989. According to Zhao, she left that child with her uncle to avoid punishment under the family planning laws, and she had the same doctor secretly reinsert her IUD the following month. Zhao alleges that she was forcibly sterilized in December of 1992 after she brought her third child home to begin attending school. She stated that she refused to pay a fine that accompanied the sterilization, and that as a result, family planning officials took some of her property. In response, she testified that she went to the family planning office to protest the laws. Neighbors and observers near the office allegedly joined in support and urged Zhao to flee when officials came to seize her. She testified that she went to hide at her uncle's home, and then fled the country when she learned that officers intended to arrest her.

After she left China, Zhao traveled through Cambodia and Canada before coming to the United States. She filed a timely application for asylum and submitted various documents in support of her claims.[1] Following a hearing on her application, the IJ refused to grant asylum, finding that Zhao was not credible.[2] This determination was based on a number of inconsistencies and implausibilities in her testimony and her asylum application, sev-

---

[1]. The Attorney General may grant asylum to an alien who establishes that she is a "refugee," which is defined in 8 U.S.C. § 1101(a)(42)(A). *See* 8 U.S.C. § 1158(b)(1) (2003). Under the statutory definition, an alien can establish that she has been "persecuted on account of political opinion" by showing that she "has been forced to abort a pregnancy or to undergo involuntary sterilization, or who has been persecuted for failure

or refusal to undergo such a procedure." 8 U.S.C. § 1101(a)(42)(A).

[2]. Because the more relaxed standard for granting asylum was not met, Zhao's claims for withholding of removal and relief under the CAT, both of which are evaluated under more stringent standards of proof, were denied as well.

eral of which we will discuss below. The BIA summarily affirmed the IJ's decision.

## II.

Where the BIA affirms without opinion, the IJ's decision becomes the final agency determination for purposes of our review. 8 C.F.R. § 1003.1(e)(4) (2003); *Dia v. Ashcroft*, 353 F.3d 228, 245 (3d Cir.2003) (en banc). In reviewing the IJ's decision, we apply the substantial evidence standard, which allows us to grant the petition and vacate the IJ's determination only if the evidence is "so compelling that no reasonable factfinder could fail to find" in Zhao's favor. *INS v. Elias–Zacarias*, 502 U.S. 478, 484, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992).

In her petition, Zhao essentially challenges the IJ's credibility determination, as that was the dispositive finding that doomed her claim for asylum. As we review such a determination, we examine whether the IJ provided specific reasons that "bear a legitimate nexus to the finding" that the petitioner's claims lack credibility. *Balasubramanrim v. INS*, 143 F.3d 157, 162 (3d Cir.1998). We will generally defer to an IJ's credibility findings, so long as they are "conditioned on support in the record." *Dia*, 353 F.3d at 249–50 (quoting *El Moraghy v. Ashcroft*, 331 F.3d 195, 205 (1st Cir.2003)).

## III.

Based on medical evidence offered along with Zhao's application for asylum, the IJ recognized the fact that Zhao had clearly undergone a sterilization procedure. The key issue then became whether Zhao offered credible evidence demonstrating that the sterilization was involuntary. *See In re Y–T–L–* (Interim Decision), 23 I. & N. Dec. 601, 2003 WL 21206539 (BIA 2003) (discussing the burdens of proof under the forced sterilization clause of the statutory

definition of "refugee"). The IJ ultimately denied Zhao's petition because the only evidence indicating that the sterilization was forced was Zhao's own testimony, which the IJ found to be incredible. That determination is our focus on appeal.

In his opinion, the IJ listed at least four major problems with Zhao's claim. The first inconsistency involved the gender of Zhao's third child. In her testimony, Zhao indicated that the child was a daughter. However, the IJ noted conflicting references in the narrative accompanying Zhao's asylum application, where the child was referred to as "him." Although there may be explanations for this inconsistency, none are apparent from the record. Another inconsistency, even more problematic than the first, involved the dates of Zhao's third pregnancy. She repeatedly testified that she had her IUD removed in May of 1988 and that she became pregnant in that same month. However, her third child was not born until September of 1989, which is sixteen full months after she allegedly became pregnant. Only after this problem was highlighted on cross-examination did Zhao claim that she did not actually get pregnant in May of 1988. Again, no explanation for this inconsistency is apparent from the record, and it constitutes a significant piece of evidence supporting the IJ's decision.

In addition to these inconsistencies, the IJ also addressed aspects of Zhao's story that he found to be implausible. For instance, he explained his reluctance to believe Zhao's claim that a doctor had agreed to secretly remove her IUD, enabling her to become pregnant again. In rejecting this piece of Zhao's story, the IJ explained that he could not believe that Chinese doctors would risk the severe penalties associated with violations of the family planning laws by secretly removing and reinserting IUDs. He also questioned how

Zhao had been able to avoid her biannual IUD checkups for the seventeen months during which her IUD was removed. According to the schedule she described in her testimony, she would have missed three separate checkups during that time – June 1988, December 1988, and June 1989. However, she only acknowledged missing one checkup, and she indicated that her family had informed the officials that she had gone away when they arrived on that date. The IJ refused to believe that avoiding such a procedure would be so simple, and Zhao's explanation did not account for the other two checkups that she would have missed. These implausibilities constitute further support for the IJ's decision.

Because we find that these problems with Zhao's testimony alone form substantial evidence in support of the denial of her application, we will not discuss the other bases for the IJ's decision at length. Suffice it to say that other minor inconsistencies only served to buttress the IJ's adverse credibility finding. In addition to her attack on the IJ's credibility determination, Zhao attempts to challenge the invocation of the streamlining regulations in her case. We have held that the streamlining procedures implemented by the Attorney General are permissible. *Dia,* 353 F.3d at 245. As Zhao's argument on this point simply restates her contentions regarding the credibility determination – contentions which we have already rejected – we see no basis for examining the BIA's decision to summarily affirm in her case.

## IV.

The success of Zhao's application for asylum was dependent upon a finding that her testimony regarding the circumstances of her sterilization was credited by the IJ. Because we find, for the reasons stated above, that substantial evidence supported the IJ's adverse credibility finding in this case, we will DENY the petition for review of the agency's decision.