

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-1-2005

# Zhang v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-4601

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Zhang v. Atty Gen USA" (2005). *2005 Decisions*. Paper 281.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/281

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 04-4601
_____

YI XIANG ZHANG;
MEI MEI LU; TIANG QIANG LU,

Petitioners

v.

UNITED STATES DEPARTMENT OF
JUSTICE, ATTORNEY GENERAL OF THE
UNITED STATES,

Respondent
_____

On Petition for Review of an Order of the Board of Immigration Appeals
INS Nos. 0313-2 : A77-009-104, A77-009-105, A77-009-106

Submitted Under Third Circuit LAR 34.1(a) October 25, 2005

Before: SLOVITER, FISHER, and ROSENN, Circuit Judges

(Filed: November 1,2 005 )

_____

OPINION OF THE COURT
_____

ROSENN, Circuit Judge.

Yi Xiang Zhang and her children, Mei Mei Lu and Tiang Qiang Lu, seek review

of a decision of the Board of Immigration Appeals ("BIA") adopting and affirming the

decision of the Immigration Judge ("IJ") that denied their application for asylum, restriction on removal to China, and withholding of removal. Zhang argues that the decisions of the BIA and IJ are not supported by the evidence. We agree.

I.

Zhang, a Chinese citizen, entered the United States illegally in July 1999 and applied for asylum in October of that year. Her children Mei Mei Lu and Tiang Qiang Lu were born in China in 1983 and 1985, respectively. Zhang claims that in 1986 she received a notice that she would be sterilized. After waiting for her husband to come home for two days, she fled early in the morning for her mother's house. Her husband found her there, and after she showed him the notice he left to hide on his boat. Ten days after she received the notice, the government cadres found her at her mother's house and removed her for sterilization.

Her husband left for the United States in 1989. In 1991 she claims she was fined 1,400 yuan because of the birth of the second child. In 1996 her husband traveled back to China and they registered their marriage. In 1999 the Chinese government fined her again for her child, this time for 10,000 yuan. Rather than pay the fine, Zhang joined her husband in the United States.

Zhang was the only witness to testify at her October 2000 hearing. The IJ issued an oral decision rejecting her claim because of an adverse credibility determination, which the BIA affirmed in December 2004. We have jurisdiction under 8 U.S.C. §

2

1252(a)(1).  As the children rely upon their mother's case, this opinion applies to them as well.

II.

As the BIA succinctly summarized:  "the issue presented is whether [Zhang's] sterilization was forced or voluntary."  It is well established that asylum applicants who have proven a forced sterilization have not only proven past persecution, but also the likelihood of future persecution unless country conditions have changed.  *In re Y-T-L-*, 23 I. & N. Dec. 601, 606 (BIA 2003); *Jie Sheng Lin v. Ashcroft*, 110 Fed. Appx. 213, 215 (3rd Cir. 2004).  ("Once the applicant has established past persecution, there is a presumption that he or she has a well-founded fear of future persecution. . . . The presumption can be rebutted only by a showing that the conditions in the applicant's country have changed since the time of the persecution.").  Neither the BIA nor the IJ dispute that Zhang was sterilized; the only question is whether she was forcibly sterilized. As there is no other evidence, Zhang must rely upon the credibility of her own testimony to prove the sterilization was forced.

An adverse credibility determination is reviewed for substantial evidence, and must be upheld unless "any reasonable adjudicator would be compelled to conclude to the contrary."  *Gao v. Ashcroft*, 299 F.3d 266, 272 (3rd Cir. 2002).  Minor inconsistencies will not impact credibility if they do not involve the "heart of the asylum claim."  *Id*. Because the BIA adopted the opinion of the IJ and gave its own discussion of the case,

3

this Court reviews the decisions of both the IJ and the BIA. *He Chun Chen v. Ashcroft*, 376 F.3d 215, 222 (3d Cir. 2004).

The IJ and BIA based their adverse credibility determination on eight inconsistencies they found in Zhang's testimony. Upon an examination of the record, seven of the supposed inconsistencies disappear and one, though real, is minor and irrelevant. In many cases, the IJ and BIA's findings either misstate the record or are illogical on their face. Each reason given by the IJ and BIA for their adverse credibility determination is discussed in turn:

(1) The BIA and IJ find fault with Zhang's testimony that "when she received her notice for sterilization, her husband was hiding on his boat." They state it contradicts her later testimony that her husband only found out about the notice after he found her at her mother's house. The BIA and IJ have simply misstated her testimony. She testified her husband was hiding when she was sterilized, not when she received the notice:

> A. . . . If the government authority did not find me then they will take my husband to be sterilized.
>
> Q. Well was your husband ever arrested or sterilized?
>
> A. No, my husband he was hiding on the boat so they found me and took me to be sterilized.

Zhang's story was internally consistent at every point that her husband was hiding on his boat when she was sterilized, not when she received the notice.

(2) The BIA finds it inconsistent that while Zhang received the sterilization

4

notice, she believed that the government might also seek to sterilize her husband. Zhang stated that "at that time before I was sterilized . . . they try to arrest either one of us to be sterilized. If the government authority did not find me then they will take my husband to be sterilized." The BIA gives no reason as to why this is inconsistent, and we fail to see how this demonstrates any flaw in her testimony.

We note that the Government's argument on this point is based on a misstatement of the record. The Government contends that "Zhang first testified that the government sought to sterilize only her," citing the IJ's summary of testimony which was not recorded by the court reporter. The IJ said no such thing. The IJ's summary specifically notes that Zhang said the cadres were looking for both her and her husband.

(3) The IJ stated that "the respondent, although first testifying that her husband could not do the work on the boat by himself later testified that he had someone on the boat to help him moving rocks." Zhang's testimony on her husband's employment is not inconsistent. Zhang testified that after the sterilization she could not help her husband work on his boat and that he could not do the work alone. It is perfectly reasonable for her to also testify that he hired someone to take her place.

(4) The IJ and BIA also discredited Zhang's testimony for inconsistency about whether there were two days or ten days between the sterilization notice and the actual procedure. This testimony goes to the heart of Zhang's asylum claim. The IJ and BIA found that the following testimony states that the sterilization took place two days after

5

Zhang received the notice:

> Q. All right. How long before they actually took you to be sterilized did you receive a notice to be sterilized?
>
> A. Well when they notify me it was two days before they, they took me so I was very afraid so that's <u>why</u> I pack all my stuff and left my home with my two children. (emphasis added)

Although her testimony may not be in the King's English, it is apparent that Zhang believed the sterilization would happen about two days after the notice, so she left her house before the cadres could come. She was giving her motivation for leaving the house when she did ("why I pack all my stuff and left"), not the timing of the actual procedure.

The IJ and BIA's reading of this testimony (i.e., "Because I was sterilized two days after the notice, I was afraid and went into hiding.") is illogical. If she was already sterilized, why did she flee her home? What was she scared of? The IJ and BIA's interpretation of this key testimony ignores the last half of her statement, producing a nonsensical result. The only reasonable interpretation of her statement is that she would have been taken on the second day had she not fled.

Zhang's statement is in perfect agreement with her later testimony:

> Q: Okay, well why would you go to your mother's house?
>
> A. The government authority they notify me for sterilization that's why I have to hide.
>
> Q. Okay, but I thought you just told us that they notified you two days before you had the sterilization procedure that you were – that you had to undergo sterilization.

A.  No, I, I, I, meant – I might have made a mistake because the total, total time of approximately ten days after the, the government notify me and that they took me for sterilization.  What I meant was two days after the notification I left and I went home and I hide in my mother's house for all those time until they came to my mother's house and took me. . . .

[W]hen [my husband] found me I was in my mother's house in Houyu then he came by and he, he asked me why did I return home to my mother's house all of a sudden and I told him that I received a notice from the female authority in the family planning and they told me that I have to be sterilized.  That's why I told him that I was scared for like two or three nights because he was not home so I pack my stuff very early in the morning and left our home village to live with my mother.

In these statements, Zhang says she went to her mother's house on the morning of the second day after the notice, but that the cadres found her after ten days.  The Government attorney misstates her previous testimony, which flusters her.  Rather than accuse the attorney of distorting her testimony, Zhang takes the blame and re-tells the story *exactly as before*.  Her testimony on the circumstances of her sterilization is entirely consistent in all parts of the record.

(5)  The BIA also claimed that Zhang's statement (on her I-589 form) that she lived at her home in Fuzhou from the birth of her second child until sterilization contradicts her claim that she hid out at her mother's house after the notification.  There is no contradiction here.  Ten days spent hiding at her mother's house hardly qualifies as a change in residence.  *Zheng*, 417 F.3d at 381 ("[A]s the form asks aliens to list their 'residences during the last five years,' it would not be unreasonable for Zheng to omit places where he stayed in hiding for no more than a few weeks.").

7

(6) The IJ found Zhang's story implausible because she could not account for the time which elapsed between the birth of her second child in 1985 and her sterilization in 1986. Neither could she account for the long periods between the two fines which were imposed on her (in 1991 and 1999), or why she was not fined again when she registered her marriage in 1996.

Zhang's inability to explain the machinations of the Chinese government is no basis to find she was not credible. The IJ gave no reason to discredit her story, and we do not find it so unbelievable so as to be *prima facie* false. It may be that the marriage registration office does not issue fines, or that it does not share a database with the sterilization officers. If the IJ found the timing of the sterilization and the fines to be implausible or incredible, he needed to give *some* reason for the finding. Without this, such a finding is mere speculation about the workings of a foreign government. *Zheng*, 417 F.3d at 381.

In any case, Zhang provides a reasonable explanation in her brief to the BIA. Amnesty International reports that family planning cadres must meet quotas, and are punished when those quotas are not met. Zhang posits that since there are quotas, there must be a periodicity to their enforcement. If Zhang was not sterilized (or fined) in a particular year, it may simply be that they did not need her to fill the quota yet.

(7) As proof of her involuntary sterilization, Zhang produced a Chinese certificate showing she was sterilized. The IJ said that a State Department report asserts

that sterilization certificates are not issued for involuntary sterilizations, and therefore Zhang was presenting "bogus evidence" to the court. The State Department report in question is not in the record. The BIA disagreed with the IJ's characterization of the State Department report. The Government also appears to agree the IJ's reasoning is invalid on this point, as it misstates the IJ's position on this point. There is not substantial evidence to support the IJ's conclusion that the certificate is fraudulent. *Gao*, 299 F.3d 266, 272.

While the certificate does not hurt Zhang's credibility, it does not help it either. The BIA found that the certificate does not say whether the sterilization was voluntary. A quick look at the record shows the BIA's finding is not in error.

(8) The IJ also found reason to disbelieve Zhang because of her inconsistent statements as to her (and her husband's) reasons for leaving China and reasons for getting a marriage certificate. The IJ also found it implausible that Zhang did not know as of 1992 that her marriage could be registered and certified in China.

It is apparent from her testimony that Zhang was attempting to present a more sympathetic story by changing her and her husband's motivations to sound more altruistic or practical. For example, she testified that her husband returned to China to care for his sick mother, but under pressure admitted that he returned to work on their asylum application. She was also coy about whether she registered her marriage solely for asylum purposes. Were Zhang proceeding under a legal theory based on her motivations,

9

such statements might be more relevant. As it is, these simple exaggerations (of what is likely one motive among many) are unrelated to whether her sterilization was involuntary. Such minor inconsistencies "are not an adequate basis for an adverse credibility finding." *Gao v. Ashcroft*, 299 F.3d 266, 272 (3d Cir. 2002).

The BIA did not rely upon (or even mention) these less-relevant grounds to support the adverse credibility assessment. We do not find them sufficient to uphold the adverse credibility determination.

## III.

The BIA found that because Zhang and her husband presented themselves to Chinese officials to register their marriage, they did not fear future persecution. The BIA supplies no basis for its belief that the marriage registration office would have Zhang's birth history and the power to impose fines or other penalties. Such unsupported speculation on the workings of the Chinese government is not sufficient to overcome the "regulatory presumption of a well-founded fear of future persecution" which attaches to involuntary sterilization. *See Zhao v. U.S. Dept. of Justice*, 265 F.3d 83, 92 (2nd Cir. 2001). In any case, those who have been sterilized involuntarily (and their spouses) qualify as refugees, absent changed country conditions. *Jie Sheng Lin*, 110 Fed. Appx. at 215; *See also Qiu v. Ashcroft*, 329 F.3d 140, 148 (2nd Cir. 2003).

Zhang's arguments under the Convention Against Torture are without merit.

## VI.

Zhang has provided credible testimony of her sterilization, and all of the supposed inconsistencies are fully explained away. We conclude the adverse credibility determination is not supported in the record. Zhang's testimony of receiving the notice, fleeing her home, hiding at her mother's house, warning her husband, and being repeatedly fined is self-consistent and supports her statement that she was forcibly sterilized.

We are very aware that we are overturning a credibility determination by an IJ that had a much better opportunity to see and evaluate the petitioner. However, the inconsistencies cited by the IJ and BIA are misreadings and misstatements of Zhang's testimony. Because there is no basis on which to support the credibility determination we are constrained to conclude that the determination was erroneous. *See Zheng*, 417 F.3d at 381 (2005). Accordingly, we also overturn the IJ's finding that her application was frivolous.

For the foregoing reasons, the Petition for Review is granted and the Board's Order of December 1, 2004, is reversed and the case remanded for further proceedings consistent with this opinion.