**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-1817
_____

XING MING HUANG
                              Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES
                              Respondent
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A097-740-382)
Immigration Judge: Honorable Miriam K. Mills
_____

Argued June 13, 2013

Before: SCIRICA, HARDIMAN, and VAN ANTWERPEN, *Circuit Judges*

(Filed: July 1, 2013)

Bruno J. Bembi, Esq. **[ARGUED]**
Room 203
P.O. Box 5248
Hempstead, NY 11551
        *Attorney for Petitioner*

Nancy E. Friedman, Esq. **[ARGUED]**
Eric H. Holder, Jr., Esq.
Thomas W. Hussey, Esq.
Nicole Prairie, Esq.
United States Department of Justice
Office of Immigration Litigation, Civil Division
Suite 7000S

P.O. Box 878
Ben Franklin Station
Washington, DC 20044
   *Attorneys for Respondent*

———

OPINION OF THE COURT

———

VAN ANTWERPEN, *Circuit Judge*.

Xing-Ming Huang ("Petitioner"), a citizen of the People's Republic of China, petitions for review of a final order of removal, which, *inter alia*, denied his request for asylum relief under 8 U.S.C. § 1158. The question presented is a narrow one. It remains undisputed that Petitioner has met his threshold burden for asylum relief by demonstrating that he suffered past persecution on account of his having, in the past, resisted China's family planning policies. That past persecution entitles him to a rebuttable presumption that he has a well-founded fear of persecution should he return to China. *See* 8 C.F.R. § 208.13(b)(1). The issue in dispute is whether the Government has met its burden in rebutting that presumption.[1] For the reasons that follow, we agree with Petitioner that, at this point, the Government has failed to present sufficient evidence to establish that he would not suffer future persecution as a result of his prior "other

———

[1] Petitioner also challenges the determination that he is not entitled to humanitarian relief pursuant to 8 C.F.R. § 208.13(b)(1)(iii). But since we find that the Government has yet to rebut Petitioner's presumption of a well-founded fear of persecution, *see infra* Part IV, it is unnecessary for us to address this issue. *See Sheriff v. Att'y Gen.*, 587 F.3d 584, 593 (3d Cir. 2009) ("humanitarian asylum" pursuant to 8 C.F.R. § 208.13(b)(1)(iii) provides relief for "an applicant who has suffered past persecution and who *does not* face a reasonable possibility of future persecution" (emphasis added)).

2

resistance" to China's family planning policy. Accordingly, we will grant the petition for review and remand Petitioner's application for further proceedings.

**I.**

*A.* *Factual Background*

Petitioner arrived at the United States on or about January 6, 2005, at or near Hidalgo, Texas, without inspection. On January 8, 2005, he was served with a Notice to Appear, which alleged he was removable from the United States as being inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i).[2] Petitioner has since conceded his removability on those grounds.

On July 11, 2005, Petitioner formally requested asylum and related relief,[3] alleging he suffered past persecution for his having previously resisted China's strict family planning policies. In 1995, while living in China's Fujian Province, Petitioner's wife gave birth to a child. Unfortunately, that child was born with a debilitating intestinal abnormality, which required corrective surgery. The child still requires continuing medical care and attention. Consequently, Petitioner and his wife wanted a second child. Their having a second child, however, would have violated China's family planning policy.

---

[2] "An alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General, is inadmissible." 8 U.S.C. § 1182(a)(6)(A)(i).

[3] In Petitioner's original Form I-589 request, he applied for asylum, withholding of removal, and relief under the Convention Against Torture.

3

After the birth of Petitioner's first child, the Chinese government forcibly installed an intrauterine device in his wife to prevent her from again becoming pregnant. In December 1995, Petitioner arranged for the device to be removed by a private physician. Petitioner's wife then became pregnant for a second time in May 1996. Eventually, her pregnancy was discovered by the local family planning authorities. Because the pregnancy violated China's family planning policy, Petitioner's wife was required to undergo a forced abortion.

When the officials arrived at his home to take away his wife for the procedure, Petitioner attempted to stop them. He was severely beaten by the officers, sustaining injuries which required surgery, left him hospitalized for two months, and required almost a year for complete recovery. After her forced abortion, Petitioner's wife had another intrauterine device forcibly inserted and was required to report regularly to Chinese authorities for gynecological exams.[4] After being released from the hospital, Petitioner was charged criminally for fighting with a Chinese government official and was forced to receive "re-education." Years later, both Petitioner and his wife fled China for the United States.

B. *Procedural Background*

On November 2, 2005, an initial hearing was held regarding Petitioner's application. On November 14, 2005, the Immigration Judge ("IJ") denied Petitioner relief on the ground that, *inter alia*, Petitioner's testimony was not credible. The Board

_____

[4] This second intrauterine device was removed by a physician in New York in 2004.

4

of Immigration Appeals ("BIA") reversed and remanded, finding Petitioner had testified credibly. Furthermore, the BIA stated that although Petitioner himself was not forced to undergo coercive medical procedures on account of China's family planning policy, he "nevertheless may still qualify as a refugee on account of a well-founded fear of persecution . . . for other resistance to a coercive population control program." *Accord Lin-Zheng v. Att'y Gen.*, 557 F.3d 147, 157 (3d Cir. 2009). In light of Petitioner's resistance to family planning officials, the BIA ordered that, upon remand, the IJ conduct a hearing to determine if Petitioner qualified as a refugee under this "other resistance" category.

On remand, the IJ again denied Petitioner relief. At the hearing, Petitioner testified as to the incident that occurred when the Chinese authorities came to take his wife and the injuries he sustained from the resulting beating. Petitioner's wife also testified, corroborating Petitioner's account of the circumstances forming the basis of his asylum claim. When asked what would happen to him should he return to China, Petitioner testified that he feared he would be "fined, arrested, and tortured" for fleeing to the United States with the assistance of snakeheads.[5] Petitioner also testified that he feared being "fined, arrested, and sterilized" if he returns to China, on account of his

---

[5] "Snakehead" is a pejorative term for "professional smuggler[s] of Chinese migrants." *Cheng v. Att'y Gen.*, 623 F.3d 175, 180 n.1 (3d Cir. 2010) (quoting *Lin v. Mukasey*, 517 F.3d 685, 687 n.1 (3d Cir. 2008)).

desire to have more children with his wife and his having had another child abroad.[6] The IJ found Petitioner's testimony credible.

The IJ concluded that Petitioner suffered harm rising to the level of persecution when he was beaten by the Chinese family planning authorities. *Accord Voci v. Gonzales*, 409 F.3d 607, 614–16 (3d Cir. 2005). Because Petitioner was beaten while attempting to stop the family planning officials from taking his wife to have a forced abortion, the IJ found that Petitioner suffered this persecution because of his "other resistance to a coercive population control program." 8 U.S.C. § 1101(a)(42). Accordingly, Petitioner was deemed to have suffered persecution on account of his political opinion, and thus was entitled to a rebuttable presumption of a well-founded fear of persecution should he return to China. *See* 8 C.F.R. § 208.13(b)(1).

All the same, the IJ found that the Government presented sufficient evidence to meet its burden to rebut Petitioner's presumption of a well-founded fear of persecution. Specifically, the Government presented evidence before the IJ that a new law, which supposedly went into effect in September 2002, now permits Chinese couples living in the Fujian Province to request permission to have a second child where, as in Petitioner's case, that couple's first child was handicapped such that the child would not be able to "work normally." Although acknowledging that Petitioner and his wife did not obtain formal permission from the Chinese government for their second child born in the United

---

[6] Petitioner's wife gave birth to a second child while in the United States on August 20, 2006.

6

States, the IJ concluded that "the birth otherwise appear[ed] permissible under the Fujian law."

The Government also presented evidence from certain United States Department of State country background reports. These reports explained, *inter alia*, that neither China nor Fujian Province exhibit a policy of sterilizing returning Chinese nationals who have had a second child while abroad. At most, Petitioner would be subject to fines or increased costs for the education of his second child or for certain social benefits. But the BIA had previously held that such monetary penalties do not constitute persecution sufficient to establish asylum eligibility. *See, e.g.*, *In re J-W-S-*, 24 I. & N. Dec. 185, 191, 194 (BIA 2007). *See also Li v. Att'y Gen.*, 400 F.3d 157, 168 (3d Cir. 2005). What is more, the Fujian Province does not count children born abroad toward the limitations in the family planning laws, unless those children are registered as permanent Chinese residents.

Noticeably absent from the IJ's analysis was discussion of any evidence showing that Petitioner would not suffer persecution upon returning to China as a result of his "other resistance" to China's family planning policy—that is, evidence showing that Petitioner would not be subject to future persecution on account of his having, in the past, resisted and interfered with the execution and enforcement of China's family planning policy.[7]

---

[7] The IJ also denied Petitioner asylum relief on discretionary grounds, as it determined that the beating Petitioner received as a result of his "other resistance" to the family planning authorities did not rise to the requisite level of severity. Moreover, the IJ noted that Petitioner's fear of persecution on account of his affiliation with snakeheads

7

Petitioner then appealed to the BIA, which adopted and affirmed the decision of the IJ. The BIA agreed with the IJ that the Government had established a fundamental change in country conditions sufficient to rebut Petitioner's presumption of a well-founded fear of persecution. The BIA based its decision primarily on the new law implemented in 2002 in the Fujian Province and a decrease in reported occurrences of violent coercive enforcement measures.

Notably, before the BIA, Petitioner argued that the IJ had erred by "conflating" his rebuttable presumption of a well-founded fear of persecution based on his past persecution—that is, his having been beaten for his "other resistance" to China's family planning policy—with his supplemental fears about returning to China. The BIA admitted that there was "some merit" to Petitioner's argument, but found that "the passage of time and change in policy" in the Fujian Province rendered the IJ's error harmless. Resting on this reasoning, the BIA, like the IJ, neglected to reference any evidence showing that Petitioner would not be persecuted should he return to China for having, in the past, resisted or interfered with the execution or enforcement of the country's family planning policies.[8] Accordingly, the BIA dismissed Petitioner's appeal. Petitioner then filed a petition for review in this Court.[9]

---

was unwarranted, citing evidence that the Chinese government rarely fines or abuses repatriated citizens on account of those grounds. This finding was later adopted and affirmed by the BIA.

[8] The only possible evidence discussed by the BIA which could relate, albeit indirectly, to whether Petitioner would be persecuted for his "other resistance" was (1) a report establishing that coercive measures like the ones suffered by Petitioner are no longer reported in the Fujian Province and (2) that sixteen years had passed since his

First established under the Refugee Act of 1980, Pub. L. 96-212, 94 Stat. 102 (1980), current section 208 of the Immigration and Nationality Act ("INA") provides noncitizens with the opportunity to apply for asylum, "irrespective" of the applicant's immigration status. 8 U.S.C. § 1158(a); *see also I.N.S. v. Cardoza-Fonseca*, 480 U.S. 421, 423, 427–28 (1987); *Lukwago v. Ashcroft*, 329 F.3d 157, 167 (3d Cir. 2003). Asylum is a powerful form of relief for an otherwise deportable noncitizen; as those granted asylum may work in the United States, can bring members of their immediate families into the United States, and are eligible to receive certain forms of public assistance. *See* THOMAS ALEXANDER ALEINIKOFF ET AL., IMMIGRATION AND CITIZENSHIP: PROCESS AND POLICY 814 (2012). Additionally, those granted asylum may petition for lawful permanent resident status after living in the United States for one year. *See* 8 U.S.C. § 1159.

Pursuant to the statutory scheme, the Attorney General has the discretionary right to grant asylum to an applicant in the event that he or she has demonstrated, to the Attorney General's satisfaction, that he or she is, in fact, a refugee. *Gao v. Ashcroft*, 299 F.3d 266, 271–72 (3d Cir. 2002) (discussing 8 U.S.C. § 1158(b)(1)). Relevant here, the INA defines "refugee" as "any person" who is "unable or unwilling" to return to his or her country of origin or his or her country of nationality "because of persecution or a

---

beating. As discussed at *infra* Part IV, even assuming the BIA based its decision on these facts, they do not serve to rebut the Petitioner's presumption.

[9] The BIA exercised jurisdiction over the IJ pursuant to 8 C.F.R. § 1003.1(b)(3). We exercise jurisdiction pursuant to 8 U.S.C. § 1252(a)(1).

well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42). For purposes of determining whether an applicant is a refugee,

> a person who has been forced to abort a pregnancy or to undergo involuntary sterilization, or who has been persecuted for failure or refusal to undergo such a procedure or for other resistance to a coercive population control program, shall be deemed to have been persecuted on account of political opinion, and a person who has a well founded fear that he or she will be forced to undergo such a procedure or subject to persecution for such failure, refusal, or resistance shall be deemed to have a well founded fear of persecution on account of political opinion.

*Id.* The applicant bears the burden of establishing elgibility as a refugee. *See* 8 C.F.R. § 208.13(a); *Sheriff v. Att'y Gen.*, 587 F.3d 584, 589 (3d Cir. 2009).

To qualify for asylum on the ground of past persecution, the applicant must show "(1) an incident, or incidents, that rise to the level of persecution; (2) that is 'on account of' one of the statutorily-protected grounds; and (3) is committed by the government or forces the government is either 'unable or unwilling' to control." *Gao*, 299 F.3d at 272 (quoting *Navas v. I.N.S.*, 217 F.3d 646, 655 (9th Cir. 2000)). As discussed *supra*, it is undisputed that Petitioner has met his burden in establishing that he has suffered past persecution on account of his prior "other resistance" to China's family planning policy. *See* 8 U.S.C. § 1101(a)(42) ("[A] person who . . . has been persecuted . . . for *other resistance* to a coercive population control program, shall be deemed to have been persecuted on account of political opinion . . . ." (emphasis added)).

An applicant who has established past persecution is presumed to have a well-founded fear of future persecution on the basis of that past persecution. 8 C.F.R. §

10

208.13(b)(1); *Abdulrahman v. Ashcroft*, 330 F.3d 587, 591–92 (3d Cir. 2003). This is different from a situation in which an applicant "demonstrate[s] that [he or] she has a well-founded fear of future persecution by showing that [he or] she has a genuine fear, and that a reasonable person in [his or] her circumstances would fear persecution if returned to [his or] her native country." *Abdulrahman*, 330 F.3d at 592 (quoting *Gao*, 299 F.3d at 272). This difference is inherent in the statutory language, which states that an applicant is eligible for asylum "because of past persecution *or* because of a well-founded fear of future persecution" on account of a statutorily protected ground. 8 U.S.C. § 1101(a)(42) (emphasis added). *See also Camara v. Att'y Gen.*, 580 F.3d 196, 202 (3d Cir. 2009); *cf. Valdiviezo-Galdamez v. Att'y Gen.*, 663 F.3d 582, 590 (3d Cir. 2011) ("Where an applicant is unable to demonstrate that s/he has been the victim of past persecution, the applicant nonetheless becomes eligible for asylum upon demonstrating a well-founded fear of future persecution if returned to his/her native country."). Consequentially, "these two roads to asylum are doctrinally distinct from one another." *Camara*, 580 F.3d at 202.

Of course, where an applicant establishes past persecution, he or she need not show a separate, independent well-founded fear of future persecution. *See id.*, 580 F.3d at 206 n.15. Instead, where an applicant shows he or she suffered past persecution, that applicant is entitled to a rebuttable presumption of a well-founded fear of future persecution. 8 C.F.R. § 208.13(b)(1). Put another way, once an applicant establishes he or she suffered past persecution on account of a statutorily protected ground, it is presumed that the applicant would continue to suffer persecution on account of that same

11

statutorily protected ground should he or she return to his or her country of origin. *Abdulrahman*, 330 F.3d at 592; *see also* 8 C.F.R. § 208.13(b)(1) ("An applicant who has been found to have established . . . past persecution shall also be presumed to have a well-founded fear of persecution on the basis of the original claim.").

Once an applicant establishes past persecution, and thus the presumption of a well-founded fear of future persecution, the Government may rebut that presumption by establishing that "there has been a fundamental change in circumstances in the native country such that the applicant no longer has a well-founded fear of persecution," *Sheriff*, 587 F.3d at 589 (citing 8 C.F.R. § 208.13(b)(1)(i)), or that it is possible for the applicant to relocate within his or her country of origin so as to avoid persecution and that such relocation would not be unreasonable. *See* 8 C.F.R. § 208.13(b)(1)(i)(B); *Lukwago*, 329 F.3d at 174. The burden to establish either condition lies with the Government, and must be established by a preponderance of the evidence. *See Berishaj v. Ashcroft*, 378 F.3d 314, 327 (3d Cir. 2004) (citing 8 C.F.R. § 1208.13(b)(1)(ii)).

## III.

Because the BIA adopted and affirmed the IJ's decision, "we review the decisions of both the IJ and the BIA." *Shehu v. Att'y Gen.*, 482 F.3d 652, 657 (3d Cir. 2007). We will uphold the denial of Petitioner's asylum application unless denial was "manifestly contrary to the law and an abuse of discretion." 8 U.S.C. § 1252(b)(4)(D). We treat factual findings as "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Li*, 400 F.3d at 162 (quoting 8 U.S.C. § 1252(b)(4)(B)). Whether the Government has rebutted Petitioner's presumption of a well-founded fear of

12

persecution is a finding of fact, which we will uphold if supported by "reasonable, substantial, and probative evidence in the record considered as a whole." *Sheriff*, 587 F.3d at 588 (citing *Yusupov v. Att'y Gen.*, 518 F.3d 185, 197 (3d Cir. 2008)). In other words, under this "substantial evidence" standard, *id.* at 589, we will uphold the determinations below "unless the evidence not only supports a contrary conclusion, but compels it." *Abdille v. Ashcroft*, 242 F.3d 477, 483–84 (3d Cir. 2001).

## IV.

Petitioner argues that the BIA and IJ erred in finding that the Government rebutted his presumption of a well-founded fear of persecution should he return to China. Petitioner raises here, *inter alia*,[10] the same claim he raised before the BIA: that the IJ—and, now, the BIA—erred in equating his presumption of a well-founded fear of persecution based on his past persecution suffered as a result of his "other resistance" to China's family planning policy with fears involving future sterilization, torture, fines, punishment, etc., because of his having had a second child in the United States and his associations with snakeheads. (*See* Petitioner's Br. at 24–26.)

It remains undisputed that Petitioner has suffered past persecution at the hands of the Chinese family planning authorities because of his prior "other resistance." *See* 8 U.S.C. § 1101(a)(42); *Voci*, 409 F.3d at 614–16. Similarly undisputed is Petitioner's

---

[10] The great majority of Petitioner's brief focuses on criticizing the substantive finding that country conditions have changed fundamentally in China and the Fujian Province such that his fears of persecution based on his having a second child in the United States and his use of snakeheads to emigrate to this country are no longer warranted. For the reasons discussed *infra*, this argument is of no consequence, as we find that the Government has not presented evidence to rebut his presumption of a well-founded fear of persecution based on his "other resistance."

13

rebuttable presumption of a well-founded fear of future persecution established by this past persecution. *See* 8 C.F.R. § 208.13(b)(1). As a result, the Government can successfully rebut Petitioner's presumption by establishing, by a preponderance of the evidence, that (1) "[t]here has been a fundamental change in circumstances such that the [Petitioner] no longer has a well-founded fear of persecution" or (2) that Petitioner "could avoid future persecution by relocating to another part of [his] country [of origin] . . . and under all the circumstances, it would be reasonable to expect [him] to do so." *See id.* § 208.13(b)(1)(i)–(ii). Regardless of the chosen method, the Government's evidence must respond to the specific circumstances giving rise to Petitioner's presumption—the fact that he resisted family planning authorizes and was persecuted for so doing. *See Sheriff*, 587 F.3d at 591 (citing *Berishaj*, 378 F.3d at 327–28) ("[E]vidence of changed country conditions can successfully rebut the presumption *only* if it addresses the specific basis for the alien's fear of persecution."). The Government has failed to produce such evidence.

Petitioner's past persecution was based on the beating he endured as a result of his challenging the authorities who came to take his wife away for a forced abortion—that is, his "other resistance" to China's family planning policy. Since the draconian physical coercion he suffered because of that "other resistance" constitutes persecution, Petitioner is considered, for all intents and purposes, to have suffered persecution on account of his political beliefs. *See* 8 U.S.C. § 1101(a)(42); *Huang v. Att'y Gen.*, 620 F.3d 372, 380 (3d Cir. 2010); *Lin-Zheng*, 557 F.3d at 157.

14

Because Petitioner suffered past persecution on account of his political belief, he is entitled to a rebuttable presumption that he has a well-founded fear of future persecution on account of that political belief. *See* 8 C.F.R. § 208.13(b)(1) ("An applicant who has been found to have established such past persecution shall also be presumed to have a well-founded fear of persecution on the basis of the original claim."). In other words, Petitioner is entitled to a rebuttable presumption that he has a well-founded fear that, should he return to China, he will again be persecuted for his prior "other resistance" to China's family planning policy. *Cf. Singh v. Gonzales*, 406 F.3d 191, 195–96 (3d Cir. 2005) ("An applicant who establishes that he or she has suffered past persecution on account of one of the five grounds enumerated in the INA 'triggers a rebuttable presumption of a well-founded fear of future persecution, as long as that fear is related to the past persecution.'" (quoting *Lukwago*, 329 F.3d at 174)).

Petitioner also fears he will be fined, arrested, tortured, and sterilized upon returning to China because (1) he came to the United States by corroborating with snakeheads and (2) he and his wife have since had another child while in the United States. These two assertions are unrelated to his having suffered past persecution on account of his "other resistance." Instead, these two fears are additional grounds upon which Petitioner might establish eligibility for asylum on account of a well-founded fear of future persecution. *See* 8 U.S.C. § 1101(a)(42). Again, however, any attempt by Petitioner to establish his eligibility for asylum on these grounds is "distinct" and independent from his eligibility for asylum based on his past persecution. *See Valdiviezo-Galdamez,* 663 F.3d at 590 (explaining that establishing asylum "upon

15

demonstrating a well-founded fear of future persecution" is an alternative for those applicants unable to establish past persecution); *Huang*, 620 F.3d at 380 (explaining that having been persecuted for refusing to comply with a coercive population control policy in the past is different than fearing future persecution based on an intent to refuse to comply with a coercive population control policy in the future); *Camara*, 580 F.3d at 202 (explaining that the two substantive grounds for asylum—i.e., past persecution and well-founded fear of future persecution—are "distinct" doctrines).

Additionally, Petitioner was under no obligation to supplement his eligibility for asylum based on past persecution. *See Camara*, 580 F.3d at 206 n.15. That Petitioner testified as to additional, alternate fears of persecution should he return to China does not alter the fact that he is entitled to status as a refugee based *solely* on his having suffered past persecution. *See Li*, 400 F.3d at 163 ("[T]o be deemed a 'refugee' under Section 1101(a)(42), [an applicant] must establish that he was persecuted . . . for 'other resistance' to China's population control policy, *or alternatively*, that he has a well-founded fear of being persecuted for his resistance to the population control policy were he to be sent back to China." (emphasis added)). Furthermore, the fact that Petitioner did not specifically articulate that he fears future persecution on account of his having, in the past, resisted the Chinese family planning authorities does not act to water down or eviscerate his statutorily provided presumption of a well-founded fear of future persecution on those grounds. *See* 8 C.F.R. § 208.13(b)(1).

Simply put, the Petitioner's additional testimony merely complemented his original asylum claim. To that end, Petitioner's asylum application is supported both by

16

his presumption of a well-founded fear of future persecution based on his having been persecuted in the past because of his "other resistance" to China's family planning policy, and also by his assertion of his independent fears that, should he return to China, he will be persecuted for associating with snakeheads and having a second child while in the United States. At this point, it should be clear that these two grounds are distinct and separate bases for relief. *See Camara*, 580 F.3d at 202 ("[A] petitioner can establish eligibility for asylum in one of two ways: (1) by showing past persecution, or (2) by showing a well-founded fear that [he or] she would be persecuted in the future . . . .").

But the IJ did not make a finding—nor did the BIA—that Petitioner's independent fears of future persecution due to his second child and use of snakeheads were enough, by themselves, to render Petitioner eligible for asylum. The IJ simply found that Petitioner, as discussed *supra*, was entitled to a presumption of a well-founded fear of future persecution based on his past persecution—that is, his "other resistance" (i.e., his political belief, *see* 8 U.S.C. § 1101(a)(42)) to China's family planning policy. As a result, the burden shifted to the Government to rebut *that* presumption. *See Berishaj*, 378 F.3d at 327.

The Government may rebut Petitioner's presumption if it establishes, by a preponderance of the evidence, one of two conditions. First, the Government can rebut Petitioner's presumption by establishing a fundamental change in country circumstances such that Petitioner's *presumed* well-founded fear of persecution is, in reality, groundless. That is, Petitioner's presumption can be rebutted if the Government establishes that he has nothing to fear should he return to China. Second, the Government can rebut

17

Petitioner's presumption by establishing that he could relocate within China so as to avoid future persecution and that it would be reasonable to expect him to relocate. *See* 8 C.F.R. § 208.13(b)(1)(i)–(ii).

The Government chose to present evidence of changed country conditions. Where changed country conditions is the Government's chosen method of rebuttal, "general evidence of improved country conditions will not suffice to rebut credible testimony and other evidence establishing past persecution; evidence of changed country conditions can successfully rebut the presumption *only* if it addresses the specific basis for the alien's fear of persecution." *Sheriff*, 587 F.3d at 591 (citing *Berishaj*, 378 F.3d at 327–28); *see also Berishaj*, 378 F.3d at 327 ("[The Government] is obligated to introduce evidence that, on an individualized basis, rebuts a particular applicant's specific grounds for his well-founded fear of future persecution." (quoting *Rios v. Ashcroft*, 287 F.3d 895, 901 (9th Cir. 2002) (internal quotation marks and citations omitted in original)).

As explained below, the evidence presented by the Government is insufficient to rebut Petitioner's presumption. First, the Government presented evidence showing that since September 2002, a new law in the Fujian Province allows couples to request permission to have a second child in the event their first child was born with a debilitating handicap. Additionally, the Government presented evidence undermining Petitioner's claim that he would be sterilized upon his return to China for having a second child while in the United States. Finally, the IJ also took notice of evidence establishing that it is increasingly rare that the Chinese government punishes, let alone persecutes, its repatriating citizens who traveled to the United States through the use of snakeheads.

18

None of this evidence addresses the specific basis of Petitioner's presumably well-founded fear of persecution: his prior "other resistance." The Government failed to present, and the IJ and the BIA failed to discuss, any evidence relevant to whether Petitioner would be subject to future persecution, should he return to China, for his prior "other resistance" to China's family planning policy. The evidence presented by the Government addresses only the supplemental fears expressed by Petitioner when he was asked what he thought would happen to him upon his return to China. But, as explained above, these supplemental fears have absolutely nothing to do with Petitioner's presumption. As a result, the finding that the Government had satisfied its burden in rebutting Petitioner's presumption was error.

Petitioner brought this error to the attention of the BIA, which quickly dismissed his argument:

> There is some merit to the respondent's argument that the Immigration Judge erred in conflating the rebuttable presumption that he has a well-founded fear of future persecution based on his past resistance to China's coercive population control policy with his fear of future persecution based on having a second child born in the United States. However, any error was harmless, as the passage of time and change in policy noted above[11] suffice to meet the DHS's burden.

---

[11] The "change in policy noted above" seems to be a reference to the new law established in the Fujian Province, which, since September 2002, permits couples to have a second child in certain circumstances. But whether this law is "new" in the way that the Government suggests is unclear. The Government has been unable to present evidence to show how, exactly, the law was changed. As a result, this piece of evidence is only marginally helpful to the Government's case.

The only other evidence discussed by the BIA is a citation to a 2007 profile on Chinese country conditions by the United States Department of State, which describes that coercive methods like the ones suffered by Petitioner are no longer reported in the Fujian Province. Also, the BIA found that Petitioner's claim lacked an independent basis, as similar country reports showed that returning Chinese citizens who had given

19

(Appendix ("App.") at 9 (citation omitted).) Although we do not require the IJ or the BIA to make Petitioner's case for him, they "may not simply overlook evidence in the record that supports [his] case." *Espinosa-Cortez v. Att'y Gen.*, 607 F.3d 101, 113 (3d Cir. 2010). It is presumed that, if Petitioner returned to China, he would be persecuted for his prior "other resistance." The Government's proffered evidence addresses only Petitioner's fears that he would be subject to persecution for having had a second child abroad or for his affiliation with snakeheads. But that evidence does not address his presumably well-founded fear that he will be persecuted for his prior "other resistance." It was never established that "the only risk" Petitioner faces should he return to China is persecution for having had a second child and his means of emigrating to this country. *See Toure v. Att'y Gen.*, 443 F.3d 310, 322 (3d Cir. 2006). In fact, even the IJ recognized the disconnect between the proffered evidence and the basis for Petitioner's claim. (*See* App. at 72 ("Because the 2002 Fujian Province family planning law . . . 'addresses the specific basis of [Petitioner's] fear of persecution,' *at least in part*, it serves to rebut the presumption of a well-founded fear of persecution in this case." (emphasis added)).)

In *Berishaj*, we made it clear that the Government is required to "introduce evidence that, on an individualized basis, rebuts a particular applicant's *specific grounds* for his well-founded fear of future persecution." 378 F.3d at 327 (emphasis added)

_____

birth to a second child while abroad are not subject to persecution and are not normally sterilized. For reasons discussed *infra*, even if we were to conclude that these two additional facts were meant to be included within the BIA's allusion to the "change in policy," they do not alter our determination that the finding below was not supported by substantial evidence.

20

(quoting *Rios*, 287 F.3d at 901) (citations and internal quotation marks omitted in original); *see also Sheriff*, 587 F.3d at 591. We reasoned such a requirement was "a natural corollary of the more general proposition that the IJ is required to consider the record as a whole." *Berishaj*, 378 F.3d at 327 (citing *Tarrawally v. Ashcroft*, 338 F.3d 180, 184 (3d Cir. 2003)). Where an applicant is entitled to a presumption of a well-founded fear of future persecution based on past persecution, the Government must establish by a preponderance of the evidence that the applicant, if he or she were to return to their country of origin, would not again suffer persecution on the grounds which gave rise to his or her prior, past persecution. Said another way, because Petitioner was persecuted in the past for his "other resistance," the Government must show that, if he were to return to China, he would not again be persecuted for having participated in "other resistance." *See Sheriff*, 587 F.3d at 591; *Leia v. Ashcroft*, 393 F.3d 427, 437 (3d Cir. 2005) ("[E]vidence of changed country conditions can only rebut an alien's fear of future persecution based on past persecution if the evidence addresses 'the specific basis for the alien's fear of persecution . . . .'" (quoting *Berishaj*, 378 F.3d at 327)); *see also Lecaj v. Holder*, 616 F.3d 111, 115 (2d Cir. 2010) ("To determine whether the government has rebutted the presumption entails 'an individualized analysis of whether the changes in conditions in [the relevant country] were so fundamental that they are sufficient to rebut the presumption that [an applicant's] fear of persecution is well founded.'" (quoting *Passi v. Mukasey*, 535 F.3d 98, 103–04 (2d Cir. 2008)) (alterations in original)).

Accordingly, the conclusion that the Government had met its burden in rebutting Petitioner's presumption was not supported by substantial evidence. The Government's burden here was to show that Petitioner would not be subject to persecution upon his return to China for his having participated in "other resistance" to China's family planning policy.[12] The proffered evidence does no such thing. The consequences of Petitioner's having had a second child abroad, and whether he and his wife having that second child would now be permitted in China, are wholly irrelevant as to whether Petitioner risks future persecution for having, in the past, proven to be a dissident to China's family planning policies and authorities. The consequences for his associations with snakeheads are also irrelevant. In short, the record simply lacks explicit evidence showing that Petitioner will not be persecuted for having resisted the family planning authorities in the past. Consequently, the finding that Petitioner's well-founded fear of future persecution has been rebutted is not supported by any evidence, let alone by "reasonable, substantial, and probative evidence." *Sheriff*, 587 F.3d at 588.

The only possibly relevant evidence presented regarding Petitioner's prior "other resistance" are two tangential facts discussed briefly by the BIA. First, the BIA noted

---

[12] Without making Petitioner's argument for him, but for the sake of being thorough, there are two possible ways that Petitioner could be persecuted in the future for his "other resistance." First, Petitioner alludes that he will continue to resist the family planning authorities when he returns to China. (*See* Petitioner's Br. at 22, 25.) Thus, there is a possibility he will be persecuted in the future for his continuing "other resistance," whatever that may be. The Government's evidence that coercive enforcement measures in the Fujian Province rarely occur weakens Petitioner's case on this ground. But it still remains that Petitioner could be persecuted simply for, in the past, having resisted and attempted to sabotage the family planning authorities. Because Petitioner's presumption is based on this second possibility, it is this fear of persecution on which our analysis focuses.

22

that "the specific circumstance that gave rise to [Petitioner's] persecution in China occurred over 16 years ago and are unlikely to recur." And second, the BIA noted that "coercive measures rising to the level of persecution are no longer reported in the Fujian Province." Even assuming that these two facts formed the basis of the BIA's decision,[13] these facts do not support an alternate conclusion.

First, the mere passage of time, alone, does not constitute a fundamental change in circumstances sufficient to meet the Government's burden here. *See Ambartsoumian v. Ashcroft*, 388 F.3d 85, 95 n.8 (3d Cir. 2004) ("[C]ountry conditions may not have changed despite the passage of time (conversely, a record could be deficient even if not much time has passed)."); *see also In re Y-T-L-*, 23 I. & N. Dec. 601, 605 (BIA 2003).[14] Absent evidence establishing a fundamental change within that passage of time, the BIA's conclusion was merely speculative in nature, and inappropriate. *Shah v. Att'y Gen.*, 446 F.3d 429, 434 (3d Cir. 2006) ("If the IJ's conclusion is not based on a specific, cogent reason, but, instead, is based on speculation, conjecture, or an otherwise

---

[13] As mentioned *supra*, the BIA found that any error that occurred through the IJ's equating Petitioner's presumption of a well-founded fear of future persecution with his supplemental fears was harmless due to "the passage of time and change in policy noted above." Thus, for the purpose of this analysis, it is clear that the fact that sixteen years had passed since Petitioner's persecution made a difference in the BIA's analysis. That said, whether the other fact mentioned above—that coercive measures similar to those suffered by Petitioner are no longer reported in his Province—formed a basis of the BIA's reasoning is not so clear. For the sake of our analysis, we assume that it did. But we note here that whether the BIA was referencing *both* the new 2002 law (which, as explained above, is irrelevant) *and* the lack of reported incidents of coercive measures in the Fujian Province is unclear.

[14] The Government conceded this much at argument.

23

unsupported personal opinion, we will not uphold it because it will not have been supported by such relevant evidence as a reasonable mind would find adequate." (quoting *Dia v. Ashcroft*, 353 F.3d 228, 250 (3d Cir. 2003))); *see also Cao He Lin v. U.S. Dep't of Justice*, 428 F.3d 391, 405 (2d Cir. 2005) (holding that "absent record evidence of practices in foreign countries, the IJ must not speculate as to the existence or nature of such practices"). The BIA and the IJ must base their decisions on record evidence and in light of all the relevant evidence before them. *See Tarrawally*, 338 F.3d at 184 (citing *Balasubramanrim v. I.N.S.*, 143 F.3d 157, 161 (3d Cir. 1998)).

Moreover, that coercive measures are no longer "reported" in the Fujian Province does not satisfy the Government's burden. The relevant portion of the referenced Department of State report states that the Fujian Province Planning Committee[15] reports that "there have been no cases of forced abortion or sterilization in Fujian in the last 10 years." (App. at 192.) *Accord Ying Chen v. Att'y Gen.*, 676 F.3d 112, 115 (3d Cir. 2011). But, in the next sentence, the report goes on: "It is impossible to confirm this claim, and, in 2006, reportedly, there were forced sterilizations in Fujian." (App. at 192.) Indeed, the information regarding whether coercive measures are still used to enforce the family planning policy in the Fujian province is inconclusive at best.[16]

---

[15] The Fujian Province Planning Committee is the official government agency responsible for enforcement and implementation of the family planning policy in the Fujian Province.

[16] If this is the "change in policy" to which the BIA was referring, this evidence does not serve to rebut Petitioner's presumption. A fear of persecution continues to be well-founded, even if "there is a less than 50% chance of the occurrence"—i.e., the future persecution—"taking place." *Cardoza-Fonseca*, 480 U.S. at 431; *see also Abdille*, 242

But regardless of whatever factual conclusion one may draw from this contradicting evidence, the fact that the Fujian Province no longer persecutes people for attempting to have a second child is not relevant to whether Petitioner, upon his return, will be subject to persecution for his prior "other resistance." Not a single piece of relevant evidence has been produced, pointed to, discussed, or alluded to, showing, specifically, that Petitioner will not be again persecuted upon his return to China. We therefore are "compel[ed]" to hold that the finding that the Government has rebutted Petitioner's presumption is not supported by substantial evidence. *See Sheriff*, 587 F.3d at 588; *Abdille*, 242 F.3d at 483–44. The IJ and the BIA cannot "cherry-pick a few pieces of evidence, state why that evidence does not support a well-founded fear of persecution, and conclude that [Petitioner's] asylum petition therefore lacks merit." *Ying Chen*, 676 F.3d at 117 (quoting *Huang*, 620 F.3d at 388). In order to rebut Petitioner's presumption, the Government has the burden to establish by a preponderance of the evidence that, if he were to return to China, Petitioner would not be again persecuted for the thing for which he was persecuted in the past—specifically here, his "other resistance" to Chinese family planning policies. *Cf. Sheriff*, 587 F.3d at 591 (citing *Berishaj*, 378 F.3d at 327–28). That burden was not met here.

---

F.3d at 495. And the BIA (and the IJ) cannot parse through the record, ignoring facts favorable to the applicant while citing only those facts relevant to discredit the applicant's claim. *See Huang*, 620 F.3d at 388 ("While we are not suggesting that the BIA must discuss every piece of evidence mentioned by an asylum applicant, it may not ignore evidence favorable to the alien.").

Finally, although we find that the Government has not met its burden to rebut Petitioner's presumption, "the ultimate decision concerning [Petitioner's] eligibility for asylum is the agency's, not ours, to make." *Fei Mei Cheng v. Att'y Gen.*, 623 F.3d 175, 197 (3d Cir. 2010); *see also Gonzales v. Thomas*, 547 U.S. 183, 186 (2006) (per curiam) ("the law's ordinary remand requirement" compels remand to the agency to make the final decision as to asylum eligibility). There may exist within the record some evidence that could satisfy the Government's burden here.[17] But "we will not scour a 700-plus page record . . . for evidence unnoticed and unanalyzed." *Berishaj*, 378 F.3d at 328. "Rather, 'the proper course . . . is to remand to the [BIA] for additional investigation or explanation.'" *I.N.S. v. Ventura*, 537 U.S. 12, 16 (2002) (quoting *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985)). We therefore grant the petition for review and remand to the BIA for further proceedings consistent with this opinion.

## V.

In conclusion, because we find that the Government has not met its burden to rebut Petitioner's presumption of a well-founded fear of persecution should he return to China, we grant the petition for review and remand for proceedings consistent with the foregoing opinion.

---

[17] Again, the Government's burden here is to establish by a preponderance of the evidence that (1) a fundamental change in country conditions has occurred such that Petitioner no longer has a well-founded fear of persecution or (2) that Petitioner could reasonably relocate within China upon his return so as to avoid persecution. *See* 8 C.F.R. § 208.13(b)(1)(i)–(ii).

26